## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL SKILL, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | Case No: |
| | ) | |
| v. | ) | Honorable: |
| | ) | |
| WALTER PALAMARCHUK, | ) | |
| an individual, and MASTER BEAT, INC., | ) | |
| a Michigan corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, MICHAEL SKILL ("Skill"), by and through his attorneys, SWANSON, MARTIN & BELL, LLP and BUSH SEYFERTH PLLC, and for his Complaint against Defendants, WALTER PALAMARCHUK ("Palamarchuk") and MASTER BEAT, INC. ("Master Beat"), states as follows:

### INTRODUCTION

1.      Michael Skill commenced this matter in an attempt to gather clarity regarding a number of financial matters concerning Master Beat Inc., a corporation of which he has been a shareholder since its inception. Despite numerous requests for this information presented to Palamarchuk (currently the Company's sole officer), and even though Skill owns 50% of the company, he has received little to no insight into the financial records of Master Beat over the past several years.

1

2.      Skill's Complaint is therefore premised on Palamarchuk's disregard for Skill's rights as a shareholder in Master Beat, as well as Palamarchuk's refusal to properly and fully account to and/or distribute certain revenues to Skill.

3.      Skill seeks a financial accounting of Master Beat in order to determine whether all revenue received by Master Beat has been properly reported, appropriate contributions have been paid, and all obligations have been complied with. Due to Palamarchuk's oppressive conduct, Skill also seeks dissolution of Master Beat pursuant to MCL 450.2489.

### THE PARTIES

4.      Skill is an individual residing in the State of Oregon.

5.      Palamarchuk is an individual residing in Birmingham, Michigan.

6.      Master Beat is a Michigan corporation with its principal place of business in Birmingham, Oakland County, Michigan.

7.      Skill and Palamarchuk are the sole shareholders of Master Beat, each owning an equal 50% of the company.

### JURISDICTION

8.      The amount in controversy exceeds $75,000.

9.      Jurisdiction of this Court is invoked by diversity jurisdiction pursuant to 28 USC §1332. This Court also has federal question jurisdiction pursuant to 28 USC §1331, as Skill asserts claims under the Lanham Act.

10.     Venue is proper pursuant to 28 USC §1391(b)(1) and (2), in that both defendants are residents of the State of Michigan and reside within the Eastern District, a substantial part of the events and omissions giving rise to the claims herein occurred within the Eastern District of Michigan, and a substantial part of property that is the subject of the action is situated within the Eastern District of Michigan.

FACTS RELEVANT TO ALL COUNTS

**Formation of "The Romantics"**

11.     Michael Skill and Jimmy Marinos formed the popular American rock band, The Romantics, in Detroit, Michigan.

12.     Palamarchuk auditioned to become the band's lead vocalist, and was brought in as a member of The Romantics, as well as bass player Richard Cole.

13.     Skill and Marinos were the band's primary songwriters. Skill was also the lead guitarist, a bassist and vocalist, while Palamarchuk was the vocalist, rhythm guitarist, and harmonicist.

14.     The band became famous and traveled the world performing hit songs written in part by Skill, including "*What I Like About You*" and "*Talking In Your Sleep*," which remain popular today.

**Formation of Master Beat, Inc.**

15.     In 1984, Skill and Palamarchuk, along with then-band members Marinos and George Canler, formed Master Beat to handle the incoming finances of Romantics-related royalty payments.

16.     For context, a band's royalties are comprised of a number of different revenue streams, each of which emanates from exploitation of their music. When a band records and releases music, that music technically contains two distinct copyrights—a copyright in the written song (commonly referred to as the "composition") and a copyright in the recorded performance of that composition (commonly referred to as the "sound recording").

17.     Exploitation of a song generates royalties from both the musical composition and the sound recording. For example, royalties are often earned by a band from the sale, stream and/or download of their sound recordings. This can come from the sale of physical records containing the recordings (such as CDs and/or vinyl records), from the use of their recordings in audio-visual works (such as movies, TV shows, commercials and video games), from the downloading and streaming of their recordings on digital service providers (such as Apple Music, iTunes and/or Spotify), and from the public performance of their recordings on certain types of digital non-interactive platforms, such as SiriusXM radio (commonly referred to as "neighboring rights" royalties).

18.     The above-referenced exploitation of a band's music will also generate a separate stream of royalties with respect to the musical composition embodied within the song's recording.  These revenues would include mechanical royalties (generated when a composition is reproduced on a physical or digital phonorecord), synchronization royalties (generated from the use of the composition in audio-visual works), and public performance royalties emanating from the exploitation of the composition in a public setting (including, for example, live performances and radio play).

19.     The above-referenced royalties are not paid to artists by a single organization or entity.  Rather, artists will commonly receive royalty payments from a number of different entities, depending on the type of exploitation and/or the partnerships the band entered into during its career.  For example, artists will often receive royalties derived from the exploitation of sound recordings through their record label or distributor, if such a relationship exists. However, they will also separately receive neighboring rights royalties from an organization known as SoundExchange, which collects and distributes digital performance royalties for sound recordings on non-interactive digital sources.

20.     With respect to individuals who write the musical compositions embodied within sound recordings (known as "songwriters"), their royalties also come from a variety of sources.  For example, some songwriters will enter into

agreements with "music publishers" to collect and distribute their songwriter royalties. Songwriters must also register with a performance rights organization (or "PRO"), such as BMI and ASCAP, to collect royalties for the public performance of their compositions—these organizations will typically pay songwriters a portion of their public performance royalties directly, even when that individual is signed to a publisher.

21.　　Master Beat was formed to facilitate the efficient collection and distribution of the royalty streams referenced above.　The company would also collect revenues generated from the sale of the band's merchandise and in connection with the band's live performances. The company would then pay these royalties through to the band members equally after accounting for and paying any expenses incurred by the band.

22.　　Upon its formation, Master Beat was owned by Skill, Palamarchuk, Marinos, and Canler, each of whom owned an equal 25% interest in the company.

23.　　Over time, Marinos and Canler departed the band and sold their shares of Master Beat back to Skill and Palamarchuk. Thus, as of the filing of this lawsuit, Skill and Palamarchuk are the sole remaining shareholders of Master Beat, each possessing an equal 50% ownership interest in the company.

**The Master Beat Shareholder Agreement**

24.     On January 5, 1984, Skill, Palamarchuk, Marinos, and Canler entered into a Shareholder Agreement, pursuant to which the shareholders agreed to operate the company in a specific manner and according to certain rules and regulations. (See Shareholder Agreement, attached hereto as **Exhibit A**).

25.     For example, Master Beat is required to (i) have a Board of Directors consisting of four shareholders; (ii) obtain the signatures of two shareholders for the transaction of business in any Master Beat bank account, including withdrawals and check signing; and (iii) secure the approval of two shareholders before incurring any liability in excess of $2,500.00 for any single contract or business transaction. (Ex. A, Section 2(a)(A)).

26.     The Shareholder Agreement also includes the following pertinent provisions pertinent to the operation of Master Beat business:

> a. Any and all corporate actions (other than election of directors) required or permitted to be taken by the shareholders or directors of Master Beat must be taken upon the agreement of three of the four [a supermajority] Shareholders or Directors. (Ex. A, Section 2(B));
>
> b. The company is not permitted to declare or confer upon any shareholder or director any salary, bonus, or benefit unless the same is given to all shareholders equally. (Ex. A, Section 2(C)).
>
> c. No shareholder is permitted to, directly or indirectly become an officer, director, employee, consultant, or shareholder of any other business entity which engages in the same or similar business of Master Beat without the other shareholders' prior written consent. (Ex. A, Section 9(a)).

7

27.     In addition, should a dispute amongst the shareholder occur that results in the occurrence of a deadlock in a vote of shareholders with respect to any matter deemed by shareholders holding 50% or more of the voting power to be a "substantive" issue, those shareholders may cause a termination of the Shareholder Agreement. (Ex. A, Section 11(d)). In the event of dissolution pursuant to Section 11 of the Shareholder Agreement, none of the shareholders will have rights in or to the name "Romantics." *Id.*

**Palamarchuk's Mismanagement of Master Beat**

28.     Following the departure from Marinos and Canler, Master Beat was operated by both Skill and Palamarchuk. In or around 2011, Palamarchuk and Skill were designated as the sole officers of Master Beat, with Palamarchuk initially holding the title of President of Master Beat.  It was the parties' intent at this time that they would hold a shareholder meeting annually during which they would alternate the President role each year. However, Palamarchuk refused to hold a shareholder meeting at any time from 2011 to the present, which resulted in Palamarchuk retaining the title of President of the company for the past 12 years.

29.     As President of Master Beat, Palamarchuk has been responsible for, among other things, ensuring that the corporation runs properly, that bills and taxes are paid and that royalty payments are properly distributed to the company's shareholders.

30.     For several years, however, Palamarchuk has mismanaged Master Beat to the detriment of both Skill and the company as a whole.

31.     For example, upon information and belief, Palamarchuk refused to fully and accurately communicate with Skill regarding important financial decisions of the company despite the fact Skill is a 50% shareholder of the company and, for most of the past decade, was also a director and officer of the Company.

32.     Palamarchuk made a number of decisions regarding the payment (or non-payment) of revenues to third-parties (including, for example, the band's former members and managers) either without consulting Skill at all, or over Skill's objections.

33.     Upon information and belief, Palamarchuk's conduct landed Master Beat, as well as Skill as a shareholder of the company, in numerous lawsuits commenced by former band members and/or managers seeking to be properly paid royalties they claimed were owed. Palamarchuk managed the direction of this litigation, hired attorneys (some of whom are believed to have had a conflict of interest in their representation of Master Beat) and settled such disputes, without fully informing or advising Skill of the actions he was taking, which ultimately cost the company, and therefore Skill, hundreds of thousands of dollars.

34.     Upon information and belief, Palamarchuk regularly acted on behalf of the company without discussing these corporate actions with Skill, let alone calling

for a vote regarding these actions as required under the Shareholder Agreement. These unilateral corporate actions included, for example, unilateral decisions made by Palamarchuk regarding the timing and extent to which Master Beat would make distribution payments to its members.

35.     Palamarchuk has also ignored or refused numerous requests by Skill to hold a shareholder meeting as provided for under the Shareholder Agreement, as well as Skill's requests to inspect and/or audit Master Beat's books and financial records to ensure the parties were being paid properly.

36.     In short, Palamarchuk refused to allow Skill to participate as an officer or director of Master Beat, and he refused to communicate with Skill regarding significant corporate actions of Master Beat.  These actions by Palamarchuk were oppressive to Skill and against the company's best interests.

**Palamarchuk Sues Skill**

37.     Over a period of several months spanning from 2020 through 2021, Skill reached out to Palamarchuk in an attempt to secure information regarding the company's finances, as well as to understand why Palamarchuk was not distributing certain royalty payments to Skill. Palamarchuk stopped returning Skill's phone calls, however, and Skill was therefore unsuccessful in obtaining answers to his questions.

38.     In light of Palamarchuk's refusal to communicate with Skill, and his unilateral efforts to deprive Skill of information and distributions to which Skill was

entitled, Skill attempted to directly secure royalties generated from songs he wrote and performed over past 40 years. Skill hoped that by contacting some of the band's partners to receive direct payments, including Sony, SoundExchange and K-Tel, he would, at a minimum, get Palamarchuk to open a dialogue regarding the business, so that the company could operate more transparently going forward.

39.     Instead, in response to Skill's actions, Palamarchuk and Master Beat filed a lawsuit against Skill in the Oakland County, Michigan Circuit Court, Case No. 2021-189454-CB, claiming breach of fiduciary duty, unjust enrichment/constructive trust, conversion, embezzlement and concealment of converted property, and seeking to remove Skill as a director of Master Beat.

40.     Due to a series of events emanating from the negligent actions of Skill's prior counsel, Skill (through counsel) filed a response in opposition to Palamarchuk's motion for summary disposition in the prior action, which response inadvertently copied and pasted arguments from Palamarchuk's motion, and which therefore wholly *agreed* with Palamarchuk's motion. Despite recognizing that this filing was in error, the court favored procedure over merits, granted Palamarchuk's motion and issued a substantial judgment against Skill. This judgment also stripped Skill of his position as an officer of Master Beat.

41.     Unbeknownst to Skill at that time, Palamarchuk and Master Beat, through self-mitigation, had recovered a majority of the money they claim Skill had

improperly received. But neither Palamarchuk nor Master Beat informed Skill or the trial court that they had done so prior to entry of judgment in their favor.

42.     This matter is currently pending appeal in the Michigan Court of Appeals, Case No. 363340, so that Skill may hopefully have his case determined on the merits, rather than vis-à-vis a procedural error.

**Palamarchuk Engages in the Same**
**Conduct Underlying His Lawsuit Against Skill**

43.     Despite the fact Palamarchuk had sued Skill for wrongfully withdrawing and diverting funds to himself for personal gain, Palamarchuk conducted himself in the same manner, and as a result, engaged in the exact same conduct to the detriment of Skill.

44.     In this regard, when Master Beat received various royalty payments from its partners, Palamarchuk directed the company's bookkeeper (Palamarchuk's personal friend who he hired without discussing with Skill) to transfer these monies to Palamarchuk without also having Master Beat conferring an equal amount of such monies to Skill. These actions were in direct contravention of Section 2(C) of the Shareholder Agreement.

45.     For example, Palamarchuk unilaterally directed Master Beat to transfer from Master Beat's bank account directly to his personal bank account (or withdrew on his own) over $50,0000 of royalty payments received from the band's various partners out notifying Skill of this corporate action, without securing Skill's

signature (or even approval) of this action as required under Section 2(A) of the Shareholder Agreement and without providing a commensurate payment to Skill (as required under Section 2(C)).

46.     When confronted about these actions, Palamarchuk, through his representatives, explicitly denied that any of the above-referenced transfers constituted mitigation of any damages he or Master Beat allegedly suffered as a result of Skill's conduct in the earlier litigation and that Master Beat had not recovered any of the funds taken by Skill (other than to the extent it had done so by collecting on its judgment).

47.     By engaging in these activities, Palamarchuk has participated in the exact same conduct he claims provided a basis for him to sue Skill for breach of fiduciary duty and conversion, and which according to Palamarchuk, justified having Skill removed as an officer of Master Beat.

**Palamarchuk Engages in Further Wrongdoing to the Detriment of Skill**

48.     Since Skill has been stripped of his officer position with Master Beat as a result of Palamarchuk's lawsuit (which as set forth above is pending appeal), Palamarchuk has acted as the sole officer of Master Beat, which Palamarchuk claims makes him the only person in control of when and how much money the shareholders (i.e. Skill and himself) receive from Master Beat.

49.    Since that time, Palamarchuk no longer provides Skill with the same level of detail concerning the company's finances that Master Beat had previously given to Skill. While Master Beat's earlier accountings to Skill were inconsistent, its bookkeeper had at least provided Skill with bank statements that reflected money paid into and out of the Master Beat account, which she sent to Skill around twice per year. Over the past eighteen months, however, Palamarchuk completely stopped sending such detailed information to Skill, claiming that even though Skill owned half of the company, he was not entitled to this information.

50.    As of the filing of this lawsuit, Palamarchuk continues to ignore and/or refuse Skill's numerous requests for an accounting of the income and expenses of Master Beat. Instead, he has sent one set of balance sheets to Skill during this time, which contains little to no detail regarding the company's actual income and expenses, and is woefully lacking the information that Master Beat had been sending Skill over the years preceding the prior litigation.

51.    Upon information and belief, Palamarchuk has acted, and is continuing to act, in this manner in retaliation for the actions Skill engaged in, which formed the basis for Palamarchuk's prior lawsuit against Skill.  Palamarchuk has been hiding behind the fact that Skill owes Palamarchuk and Master Beat money as a result of the judgment entered against Skill in the earlier lawsuit, but in doing so, Palamarchuk has provided virtually no information to Skill with which Skill could

ascertain how much of this judgment has been paid off, from what monies the judgment has been reduced, and what amounts have been received and paid out by Master Beat that would constitute distributions to Skill.

52.     In short, Palamarchuk is operating Master Beat as though he is the company's sole owner, and the only person vested with the authority to make decisions concerning the company, despite that fact Master Beat remains subject to the terms and conditions of the Shareholder Agreement. Palamarchuk has refused to provide any clarity to his co-owner as to revenues generated, or expenses incurred, by the company over the past year and a half, and he has refused to identify any of the distributions he has made to himself, or to Skill during this period of time.

53.     In addition, despite the fact that Master Beat was formed with four Shareholders on its Board of Directors, Palamarchuk has been insistent on operating the company as its sole officer and director, and he has rejected Skill's request to elect any additional individuals to Master Beat's board so that company decisions could be made with more transparency, deliberation and oversight. (**Exhibit A**, Section 2(a)(A)).

54.     This has left Skill in an untenable position of having no insight into the company's operations due to the conflict that exists between him and the only individual with access to, and control over, the company's operations and finances.

55.     Upon information and belief, Palamarchuk has also participated in numerous live performances under the "Romantics" name in violation of the Shareholder Agreement.

56.     For example, Palamarchuk has advertised and performed as "The Romantics" at the 2023 Cherokee Indian Fair in North Carolina on October 7, 2023. In advertisements for this   performance, the text and the photograph used indicated that the whole band would be performing:





57.     The photograph used for the advertisement actually included Skill's image, yet Skill did not perform at this event nor did Palamarchuk invite him to perform at this event (or even notify him of the event). Palamarchuk never contacted Skill regarding this event or asked Skill if he approved of Palamarchuk performing as "The Romantics" without Skill. Upon information and belief, neither Palamarchuk nor Master Beat compensated Skill for the use of his image and likeness in promoting this performance, or other performances.

58.     Upon information and belief, Palamarchuk used Master Beat income to fund numerous performances as "The Romantics," but he has not deposited into the

Master Beat bank account any or all of the revenues received from these performances, nor have they accounted to Skill for his share of the profits from these performances under the "Romantics" name.

59.     To the extent Palamarchuk performed solely under the "Romantics" name without paying such funds into the Master Beat account, such actions are directly competitive with Master Beat. But Palamarchuk never asked Skill for his prior written consent to perform in a manner that competes with Master Beat as is required under the Shareholder Agreement. (**Exhibit A**, Section 9(a)).

60.     Additionally, former band member, Canler, previously sued Palamarchuk, Skill, and Master Beat, challenging the amount of record and publishing royalties he received. The parties entered into a Settlement Agreement and General Release, wherein Canler relinquished his right or interest in the name, trademark, and/or use of "The Romantics," and expressly warranted not to use the same.

61.     Despite this settlement, Palamarchuk unilaterally invited Canler to perform with Palamarchuk as "The Romantics" without providing any notice to, consulting with, or seeking any prior approval from Skill.

62.     Upon information and belief, Palamarchuk has also recently released new music under the "Romantics" name without informing Skill of his intent to do so and without securing any input or approval from Skill with respect to the

18

agreements Master Beat would enter into with third-parties for purposes of distributing and/or exploiting this music.   Upon further information and belief, the financial obligations that Master Beat would be incurring in connection with such business transactions would exceed $2,500 in liabilities owed to these third-parties, which would require approval of both shareholders.

### COUNT I
### DEMAND FOR ACCOUNTING
#### (AGAINST MASTER BEAT AND PALAMARCHUK)

63.    Skill repeats and realleges Paragraphs 1 through 62 as Paragraph 63 of Count I.

64.    By virtue of the foregoing, a relationship exists between Master Beat and Palamarchuk, on the one hand, and Skill on the other hand, pursuant to which Master Beat (and Palamarchuk as Master Beat's President and sole officer and director) owe skill an accounting.

65.    Specifically, as half owner of Master Beat, Skill is entitled to receive distributions (which amounts should either be directly paid to him or should reduce the judgment entered against him) per the terms of the Shareholder Agreement. But the true amount of money owed to Skill is unknown, as Master Beat and Palamarchuk have refused to provide Skill with proper, complete and/or accurate financial documents to allow Skill to evaluate what has been paid and/or credited to him, or what he is properly owed.

66.    Skill seeks an accounting from Palamarchuk and Master Beat for revenues Master Beat has received and distributed from June 30, 2020 through the present, so that he may ascertain the amount of money that is due and payable to him, if any.

WHEREFORE, the plaintiff, MICHAEL SKILL, hereby respectfully requests that this Honorable Court enter judgment requiring MASTER BEAT, INC. and WALTER PALAMARCHUK to prepare, at its sole expense, a true and accurate accounting for the time frame beginning five (5) years prior to commencement of this action through the date of the accounting, and for such additional relief as set forth above, to which plaintiff may be entitled and which this Court deems just and proper.

## COUNT II
## DEMAND FOR INSPECTION BY
## SHAREHOLDER UNDER MCL 450.1487
### (AGAINST MASTER BEAT)

67.    Skill repeats and realleges Paragraphs 1 through 66 as Paragraph 67 of Count II.

68.    Skill's is also entitled to inspect the books and records of Master Beat pursuant to M.C.L.A. §450.1487. In this regard, Skill requested that Master Beat deliver to him a copy of its balance sheet as of the end of the 2022 fiscal year, as well as its statement of income for the fiscal year and a statement of source and application of funds for the fiscal year in accordance with M.C.L.A. §450.1487(1).

20

69.     Skill also provided Master Beat with a written demand to make available for inspection the company's financial books and records in accordance with M.C.L.A. §450.1487(2), including:

    a. Documentation reflecting all payments and revenues received by Master Beat from January 1, 2018 through the date of inspection;

    b. Documentation reflecting all expenses paid to third-parties by Master Beat from January 1, 2018 through the date of inspection;

    c. Documentation reflecting the timing and amount of any and all payments and/or distributions made by Master Beat to its officers and/or shareholders from January 1, 2018 through the date of inspection;

    d. Copies of all Master Beat bank statements and transaction ledgers from January 1, 2018 through the date of inspection;

    e. Copies of all records reflecting payments of any money payable or belonging to Master Beat that is deposited into any other bank account, including by way of example but not limitation, any transactions where money was paid by a vendor, partner, licensee, label or publisher of Romantics music (e.g. Sony, K-Tel, live music promoters, etc.) and then deposited into any bank account other than Master beat (e.g. Romantics Detroit LLC); and

    f. Copies of all contracts entered into by Master Beat from January 1, 2018 through the date of inspection;

    g. Copies of tax returns, and documentation supporting such returns, for the years 2018 through 2022;

    h. Copies of all financial documentation maintained by Master Beats bookkeeper in the ordinary course of business from January 1, 2018 through the date of inspection.

70.     Skill seeks to inspect these documents for the purpose of obtaining and transparency as to Master Beat's financial endeavors during an extended period of time for which has not received any information concerning the amounts of money Master Beat has received, has expended, or has distributed to shareholders. The above-referenced documents are directly connected with this proper purpose.

71.     Skill delivered his written demand to Master Beat registered agent at its registered office by U.S. mail, and sent an additional copy to Master Beat's counsel by e-mail. More than five business days have passed since Skill delivered his written demand to Master Beat, and Master Beat has not permitted an inspection of the books and records sought to be inspected by Skill, as it was required to do in accordance with M.C.L.A. §450.1487(3).

WHEREFORE, the plaintiff, MICHAEL SKILL, hereby respectfully requests that this Honorable Court enter judgment compelling MASTER BEAT, INC. to allow Skill to conduct an inspection of the above-referenced books and records, to reimburse Skill for all costs, including reasonable attorney fees, incurred by Skill to obtain this inspection, and for such additional relief as set forth above, to which plaintiff may be entitled and which this Court deems just and proper.

## COUNT III
## ACTION BY SHAREHOLDER UNDER MCL 450.1489
### (Against Master Beat and Walter Palamarchuk)

72.     Skill repeats and realleges Paragraphs 1 through 71 as Paragraph 72 of

Count III.

73.     The actions of Palamarchuk, as the sole director of Master Beat, and

the individual in control of the corporation are illegal, fraudulent, willfully unfair

and oppressive to the corporation or to Skill.

74.     Palamarchuk's actions have interfered with Skill's distributions and

other shareholder interests in a manner that is substantially disproportionate to

Palamarchuk's own interests.

75.     This Court may enter one or more of the following forms of relief as

appropriate pursuant to MCL 450.1489:

   a. Dissolution and liquidation of assets and affairs of Master Beat
      pursuant to MCL 450.1489(1)(a);

   b. Cancellation or alteration of those provisions of the Shareholder
      Agreement that allow Palamarchuk to serve as the sole director and
      officer of Master Beat, so as to allow for a more comprehensive and
      equitable manner by which to operate the daily activities of the
      company, pursuant to MCL 450.1489(1)(b);

   c. Directing Master Beat to provide a complete and detailed
      accounting to Skill in an effort to provide full transparency
      regarding the corporate activities of Master beat over the past thirty-
      six (36) months pursuant to MCL 450.1489(1)(d);

   d. An award of damages in favor of Skill pursuant to MCL
      450.1489(1)(f);

23

e.  Such additional relief as this Court deems equitable and appropriate.

WHEREFORE, the plaintiff, MICHAEL SKILL, hereby respectfully requests that this Honorable Court enter the following relief:

1.  Dissolving and liquidating Master Beat;

2.  Requiring Master Beat and Palamarchuk to prepare, at their sole expense, a true and accurate accounting for the period of time beginning thirty-six (36) months prior to commencement of this action through the date of the accounting;

3.  Cancelling or altering those provisions of the Shareholder Agreement that allow Palamarchuk to serve as the sole director and officer of Master Beat;

4.  Entering judgment against defendants Master Beat, Inc. and Walter Palamarchuk, in an amount to be determined at trial, but in no event less than $75,000,

5.  For such additional relief as set forth above, to which plaintiff may be entitled and which this Court deems just and proper.

## COUNT IV
## BREACH OF FIDUCIARY DUTY
### (AGAINST WALTER PALAMARCHUK)

76.  Skill repeats and realleges Paragraphs 1 through 75 as Paragraph 76 of Count IV.

77.  As President and a shareholder of Master Beat, and pursuant to the Shareholder Agreement, Palamarchuk owes Skill a fiduciary duty of loyalty, care, and good faith.

24

78.     Palamarchuk's duties to Skill barred not only self-dealing, but also the avoidance of situations in which his personal interests conflicted with the interest of Master Beat and/or Skill.

79.     Palamarchuk nevertheless breached these duties by his careless and intentional misconduct in one or more of the following ways:

a.  Intentionally withholding royalty payments and/or company distributions from Skill in accordance with the Shareholder Agreement;

b.  Intentionally and fraudulently withdrawing money from the Master Beat bank account without also paying Skill a similar amount of money in violation of the Shareholder Agreement;

c.  Intentionally ignoring and/or refusing Skill's requests to elect additional individuals to Master Beat's Board of Directors;

d.  Intentionally and fraudulently diverting corporate opportunities of Master Beat by performing with his own band under the "Romantics" name and failing to tender the performance revenues to Master Beat;

e.  Intentionally and fraudulently advertising and participating in live performances under the name "The Romantics" without disclosing to the public that certain band members, including Skill, would not be performing;

f.  Intentionally and fraudulently withholding money received from live performances under the "Romantics" name from Master Beat and/or Skill;

g.  Intentionally ignoring and/or refusing Skill's requests for an accounting of Master Beat's income and expenses;

h.  Releasing new music under the name "The Romantics" without notifying and/or engaging in any discussion with Skill, concerning

the manner by which the new music is being released and/or the material terms of any agreement with third-parties concerning the distribution of such music;

i. Engaging in otherwise grossly negligent conduct, intentional misconduct, or knowing violations of the law, as set forth in part, above.

80.   Palamarchuk's misconduct was fraudulent and intentional in nature, or at least with such gross negligence as to indicate a wanton disregard for the rights of Skill.

81.   As a direct and proximate result Palamarchuk's breach of fiduciary duties, Skill has suffered significant damages.

WHEREFORE, the plaintiff, MICHAEL SKILL, hereby respectfully requests that this Honorable Court enter judgment against defendant, WALTER PALAMARCHUK, in an amount to be determined at trial, but in no event less than $75,000, and for such additional relief as to which he may be entitled and which this Court deems just and proper.

## COUNT V
## BREACH OF CONTRACT
### (AGAINST WALTER PALAMARCHUK)

82.   Skill repeats and realleges Paragraphs 1 through 81 as Paragraph 82 of Count V.

83. The Shareholder Agreement is a duly executed and enforceable contract, giving rise to legal obligations between Palamarchuk and Skill as shareholders of Master Beat.

84. Palamarchuk breached his contractual obligations under the Shareholder Agreement in one or more of the following ways:

   a. Withholding royalty payments and/or company distributions from Skill in accordance with the Shareholder Agreement;

   b. Withdrawing money from the Master Beat bank account without also paying Skill a similar amount of money in violation of the Shareholder Agreement;

   c. Ignoring and/or refusing Skill's requests to elect additional individuals to Master Beat's Board of Directors;

   d. Securing the approval of two shareholders before incurring any liability on behalf of Master beat in excess of $2,500.00 for any single contract or business transaction;

   e. Performing with his own band under the "Romantics" name and failing to tender the performance revenues to Master Beat;

   f. Advertising and participating in live performances under the name "The Romantics" without informing Skill and securing Skill's approval to do so;

   g. Withholding money received from live performances under the "Romantics" name from Master Beat and/or Skill;

   h. Taking corporate actions required to be taken by the shareholders of Master Beat without first securing an affirmative positive vote of a supermajority of the company's shareholders;

27

    i. Ignoring and/or refusing Skill's requests for an accounting of Master Beat's income and expenses; and

    j. Upon information and belief, entering into third-party agreements on behalf of Master Beat pursuant to which the Company has incurred obligations and/or liabilities exceeding $2,500, without notifying Skill and/or seeking Skill's approval;

    k. Engaging in otherwise conduct in violation of the Shareholder Agreement, as set forth in part, above.

85.    Skill has been and remains ready, willing and able to perform his obligations under the Shareholder Agreement.

86.    Palamarchuk's breach of contract has caused Skill significant damages in an amount to be determined at trial.

WHEREFORE, the plaintiff, MICHAEL SKILL, hereby respectfully requests that this Honorable Court enter judgment against defendant, WALTER PALAMARCHUK, in an amount to be determined at trial, but in no event less than $75,000, and for such additional relief as to which he may be entitled and which this Court deems just and proper.

## COUNT VI
## COMMON LAW RIGHT OF PUBLICITY
### (AGAINST WALTER PALAMARCHUK)

87.    Skill repeats and realleges Paragraphs 1 through 86 as Paragraph 87 of Count VI.

88.    Skill has a pecuniary right and interest in the commercial exploitation of his likeness, name, and identity.

28

89.     Palamarchuk used and continues to use Skill's likeness, name, and identity on advertisements for performances in which Skill is not a participating performer, which Palamarchuk has used solely for his own pecuniary advantage.

90.     Skill did not authorize or consent to Palamarchuk's use of Skill's likeness, name, and identity.

91.     Palamarchuk's use of Skill's likeness, name, and identity has no artistic relevance to the underlying performances by Palamarchuk.

92.     Palamarchuk's use of Skill's likeness, name, and identity on advertisements for performances without Skill's authorization or permission explicitly misleads the consuming public as to the source and/or content of the underlying work.

93.     Palamarchuk's use of Skill's likeness, name, and identity was without Skill's authorization or permission.

94.     Palamarchuk's use of Skill's likeness, name, and identity on advertisements for performances without Skill's authorization or permission creates a false suggestion of endorsement or sponsorship by Skill in the minds of the consuming public.

95.     Palamarchuk's use of Skill's likeness, name, and identity constitutes an invasion of Skill's right of publicity.

96.     As a result of Palamarchuk's conduct, Skill has suffered significant damages.

WHEREFORE, the plaintiff, MICHAEL SKILL, hereby respectfully requests that this Honorable Court enter judgment against defendant, WALTER PALAMARCHUK, in an amount to be determined at trial, and for such additional relief as to which he may be entitled and which this Court deems just and proper.

## COUNT VII
## FALSE DESIGNATION UNDER THE LANHAM ACT, 15 USC § 1125(a)
### (AGAINST WALTER PALAMARCHUK)

97.     Skill repeats and realleges Paragraphs 1 through 96 as Paragraph 97 of Count VII.

98.     Palamarchuk's use of Skill's likeness, name, and identity in advertising Palamarchuk's live performances which do not feature Skill constitutes a false designation of the source of origin, sponsorship, approval, or association, which is likely to deceive and has deceived fans and prospective customers/audience members into believing the Skill would be performing alongside Palamarchuk as "The Romantics," or that Skill sponsored, approved, or associated with Palamarchuk's performances, and, as a consequence, are likely to confuse, has confused, and will continue to confuse fans, customers, and audience members typically enjoyed by Skill.

99.    Skill has been and will continue to be damaged as a result of Palamarchuk's conduct.

WHEREFORE, the plaintiff, MICHAEL SKILL, hereby respectfully requests that this Honorable Court enter judgment against defendant, WALTER PALAMARCHUK, in an amount to be determined at trial, and for such additional relief as to which he may be entitled and which this Court deems just and proper.

## COUNT VIII
## UNJUST ENRICHMENT
### (AGAINST WALTER PALAMARCHUK)

100.    Skill repeats and realleges Paragraphs 1 through 65 as Paragraph 100 of Count VIII.

101.    In the alternative to Count IV, by virtue of the foregoing, Palamarchuk had no right to withdraw or transfer funds from the Master Beat bank account and to retain same.

102.    As such, Palamarchuk has been unjustly enriched to Skill's detriment.

103.    The Court should impose a constructive trust upon the amount withdrawn and/or transferred, order that it be returned, and enter injunctive relief to preclude any additional improper acts by Palamarchuk.

WHEREFORE, the plaintiff, MICHAEL SKILL, hereby respectfully requests that this Honorable Court enter judgment against defendant, WALTER PALAMARCHUK, in an amount to be determined at trial, but in no event less than

$75,000, and for such additional relief as to which he may be entitled and which this Court deems just and proper.

## COUNT IX
## COMMON LAW AND STATUTORY CONVERSION
### (AGAINST WALTER PALAMARCHUK)

104.   Skill repeats and realleges Paragraphs 1 through 103 as Paragraph 104 of Count IX.

105.   Upon information and belief, Palamarchuk knowingly stole and converted for his own use Skill's rightful payments due to be paid to Skill under the Shareholder Agreement, and he concealed the stolen or converted funds from Skill.

106.   Palamarchuk's actions constitute conversion and embezzlement at common law by virtue of a distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein. Palamarchuk is thus liable for common law conversion.

107.   Palamarchuk took these funds to which he was not entitled, and therefore converted Skill's assets for his own use and is liable for statutory conversion under MCLA 600.2919a.

108.   Additionally, Palamarchuk knowingly received, possessed, concealed and aided in the concealment of Skill's assets and is therefore liable for statutory conversion under MCLA 600.2919b.

109. At the time Palamarchuk appropriated Master Beat's assets, he knew they were the converted property of Master Beat and Skill.

110. Palamarchuk has refused to return or pay the assets owed to Skill.

111. Palamarchuk is therefore also liable for three times the action damages sustained, plus costs and reasonable attorneys' fees.

WHEREFORE, the plaintiff, MICHAEL SKILL, hereby respectfully requests that this Honorable Court enter judgment against defendant, WALTER PALAMARCHUK, in an amount to be determined at trial, but in no event less than $75,000 in actual damages, as well as an award of costs, attorneys' fees incurred in connection with this matter, an award of treble damages, and for such additional relief as to which he may be entitled and which this Court deems just and proper.

## COUNT X
## DISSOLUTION OF MASTER BEAT
### (AGAINST MASTER BEAT)

112. Skill repeats and realleges Paragraphs 1 through 111 as Paragraph 112 of Count X.

113. By virtue of the foregoing, Palamarchuk has engaged in an ongoing and continuous course of conduct, and a series of significant actions that are illegal, fraudulent, willfully unfair, and/or oppressive, and which substantially interfere with Skill's interests as a shareholder.

114.   Palamarchuk's conduct has frustrated the purpose of the Shareholder Agreement in that he has refused to hold a shareholder meeting so the parties may discuss and vote upon integral issues concerning the company's operation, including how to address the composition of the board of directors so that more than a single individual is involved in the daily activities of Master Beat.

115.   Palamarchuk has also created a deadlock between the parties regarding concerning multiple matters deemed by Skill, a shareholder holding 50% of the voting power of Master Beat, to be substantive.

116.   Pursuant to Section 11(d) of the Shareholder Agreement, Skill seeks to dissolve the Shareholder Agreement.

WHEREFORE, the plaintiff, MICHAEL SKILL, hereby respectfully requests that this Honorable Court enter judgment dissolving MASTER BEAT, INC., as well as for such additional relief as to which he may be entitled and which this Court deems just and proper.

## JURY DEMAND

Plaintiff, MICHAEL SKILL, demands trial by jury on all issues so triable.

Respectfully submitted,

Dated: December 15, 2023.                    By: */s/ Derek J. Linkous*
                                             Derek J. Linkous (P82268)
                                             Zakary A. Drabczyk (P84777)
                                             BUSH SEYFERTH PLLC
                                             100 W. Big Beaver Rd., Ste. 400

34

Troy, MI 48084
(248) 822-7800
linkous@bsplaw.com
drabczyk@bsplaw.com

Jeffrey S. Becker (ARDC: 6282492)
Amanda Alasauskas (ARDC: 6326529)
SWANSON, MARTIN & BELL, LLP
330 N. Wabash Ave., Suite 3300
Chicago, IL 60611
T: (312) 321-9100
F: (312) 321-0990
jbecker@smbtrials.com
aalasauskas@smbtrials.com

*Attorneys for Plaintiff Michael Skill*