# Exhibit A

## SHAREHOLDER AGREEMENT

Agreement made this 5th day of January, 1984, by and among JAMES MARINOS, 14100 Gratiot Avenue, Detroit, MI 48205, MICHAEL SKILL, 31800 Hayes, Fraser, MI, GEORGE CANLER, 14100 Gratiot Avenue, Detroit, MI 48205, and WALTER PALAMARCHUK, 2425 Commor, Hamtramck, MI 48212 being referred to, collectively, as the "Shareholders"), and MASTER BEAT, INC., a Michigan corporation with its principal office located at 20780 Winchester, Southfield, Michigan 48076 (the "Corporation").

### W I T N E S S E T H :

WHEREAS, the Corporation is authorized to issue 1,000 shares of capital stock, no par value; and

WHEREAS, the Shareholders are the owners of all of the issued and outstanding shares of the Corporation, as follows:

| Name | Number of Shares Common Stock Owned | Percentage of Ownership |
|---|---|---|
| James Marinos | 200 | 25% |
| Michael Skill | 200 | 25% |
| George Canler | 200 | 25% |
| Walter Palamarchuk | 200 | 25% |

and

WHEREAS, the Shareholders have agreed that it is in their best interests and those of the Corporation to make specific provision regarding the sale or purchase of their respectively owned shares of stock under certain conditions, and to provide for certain other specified contingencies.

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and agreements herein contained, it is agreed as follows:

1. Stock Ownership

   (a) The shares of the Corporation's stock now owned by the Shareholders were duly authorized, validly issued and are fully paid and non-assessable shares of the Corporation's stock except as indicated in this agreement, are free and clear of all liens, claims or encumbrances of any kind or nature.

   (b) The shares of the Corporation's stock issued to the Shareholders were issued by the Corporation in

-1-

consideration of the payment to the Corporation of the following sums:

| | |
|---|---|
| James Marinos | $ 10.00 |
| Michael Skill | 10.00 |
| George Canler | 10.00 |
| Walter Palamarchuk | 10.00 |

(c)  This agreement shall supercede all prior "shareholders agreements" with respect to the Corporation and its Shareholders, any and all of which agreements are hereby cancelled and of no further force nor effect.

2. Internal Affairs

(a)  Provided that the Shareholders are in full compliance with their respective obligations hereunder, and during the term of this agreement, none of the Shareholders has sold any portion of their respective shares in the Corporation, the Shareholders shall vote their respective shares as follows:

A. Election of Directors and Officers and Conduct of Business

The Corporation will have a Board of Directors consisting of four members. Each of the Shareholders shall vote all of his shares for the Shareholders to be the Directors for the Corporation. As directors of the Corporation the parties agree that they will vote their respective shares to elect the following persons as officers of the Corporation, to the office set forth opposite their respective name:

| | | |
|---|---|---|
| James Marinos | – | President |
| Walter Palamarchuk | – | Vice President |
| Michael Skill | – | Treasurer |
| George Canler | – | Secretary |

The transaction of any business in any bank account opened by the Corporation, including but not limited to withdrawals and check signing, will require the signature of two of four Shareholders or their designees. The Corporation will not incur any liability in excess of Two Thousand Five Hundred ($2,500) dollars for any one contract or business transaction without the approval of two of the four Shareholders.

B. Action by Shareholders or Directors

Anything contained in the Business Corporations Law of the State of Michigan notwithstanding, or in the Certificate of Incorporation or By-Laws of the Corporation, any and all corporate action (other than the election of directors as provided for in subparagraph "A" hereof) required or

-2-

permitted to be taken by Shareholders or Directors of the Corporation, whether by meeting, written consent or otherwise, shall be taken upon the agreement of three of the four Shareholders or Directors, as the case may be. The parties agree that they will cause counsel to the Corporation to file a certificate of amendment to the Corporation's certificate of incorporation with the Secretary of State of Michigan and amend the Corporation's By-Laws to reflect the agreement contained in this paragraph if required.

C. Salary, Benefits, Etc.

During the term of this agreement no bonus, perquisite or benefit shall be declared or conferred upon any Shareholder unless declared or conferred upon the Shareholders equally.

Notwithstanding anything to the contrary provided for in this agreement or in the separate employment agreements of even date between each of the Shareholders and the Corporation, it is understood and agreed that no Shareholder shall receive royalties on any phonograph record embodying the performances of the group a/k/a "The Romantics" (the "Group"), until such time as all Shareholders are entitled to receive royalties on such phonograph records. For example, notwithstanding the fact that one Shareholder did not perform on a phonograph record embodying the performances of the Group and recording costs heretofore incurred for all phonograph records embodying the performances of the Group have not been recouped but recording costs for the phonograph records on which such Shareholder did perform have been recouped, Shareholder will, nonetheless, not be entitled to any royalties on such phonograph records until all recording costs for all phonograph records heretofore recorded by the Group have been recouped.

D. Sale of Additional Shares to Shareholders

During the term of this agreement (except upon the written consent of the Shareholders), the Corporation shall not sell or offer to sell to any of the Shareholders any additional shares (regardless of class), rights, options, warrants or the like, unless a similar offer is made to the other Shareholders upon identical terms and conditions.

E. In the event that three of the four Shareholders determine that the course of conduct of the fourth Shareholder is detrimental to the welfare or best interests of the Corporation, then in that event at a duly called meeting of the Shareholders at which a quorum is present and acting throughout three of the four Shareholders can vote to require the fourth Shareholder to sell his shares to the Corporation, in

accordance with the provisions of paragraphs 3 and 6 below, except that the Corporation and remaining Shareholders may waive the 30 and 15 day notice provision of paragraph 3. In the event of the failure of the Selling Shareholder to execute any documents necessary to transfer his shares to the Corporation or remaining Shareholders, the remaining Shareholders will nominate one of them who will act as attorney-in-fact with full power to execute such documents as are necessary to effect the foregoing purposes.

If the Corporation is unable to purchase the shares, they shall, as in paragraph 3, be offered to the remaining Shareholders. In such event the selling Shareholder shall have no right, title or interest in any assets or rights of the Corporation, except for the prospective payment for his shares from the date of the vote of Shareholders.

3. Transfers During Lifetime

A. Restriction on Transfer

Each of the Shareholders agrees that he will not sell, assign, transfer, donate, give, bequeth, pledge, encumber, or in any manner or by any means whatsoever dispose of all or any portion of the shares of the stock in the Corporation, regardless of class (the "Shares") which are now or may hereafter be held or owned by him, except as provided by and pursuant to the provisions of this agreement.

B. Conditions Under Which Any Sale (etc.) May Be Made

(a) Any Shareholder (the "Selling Shareholder") desiring to sell, assign, transfer, pledge, encumber or in any other way dispose of any or all of his Shares, shall give to the Corporation at least thirty (30) days written notice by registered or certified mail of his said intention (the "Notice of Intention") setting forth the total number of Shares which he desires to sell or dispose of. Each such notice shall state that the party desiring to sell or dispose of his Shares offers to sell the same to the Corporation at a price to be determined and paid in the manner hereinafter provided. A copy of each such notice, signed by the offeror, shall be sent by registered or certified mail to the other parties to this agreement who are then still Shareholders of the Corporation.

(b) The bankruptcy, voluntary or otherwise, of any party hereto, or the making of an assignment for the benefit of creditors, or the occurrence of any event which would make any of the Shares which are the subject of this agreement subject to involuntary transfer by way of attachment or otherwise, shall, *ipso facto*, constitute an offer by the party so

-4-

affected, of all of his Shares of stock under the terms of this Agreement.

(c) The Corporation shall have a period of thirty (30) days from the date of receipt of the Notice to it within which to determine whether or not it will accept the offer as to all or any part of the Shares offered to it (the "Corporation's Option Period") to the extent that it is legally then able to acquire such Shares. In the event the Corporation is legally able to reacquire such Shares, it shall, within said thirty (30) day period, notify the offeror of its election to do so, specifying the number of Shares it elects to purchase and the Closing Date. Such Notice shall be by registered or certified mail and the Corporation shall simultaneously furnish to the remaining Shareholders a copy of such acceptance. The Corporation shall have the right to elect to purchase all or any portion of the offered Shares.

(d) In the event that the Corporation is unable to acquire such Shares, or if the offer is not accepted within the prescibed period of time, or if accepted only as to part of the offered Shares, such unaccepted Shares shall be deemed to be offered to the remaining Shareholders upon the same terms and conditions as initially offered to the Corporation (the "Reoffer"), with each such Shareholder initially having the right to purchase up to one-third of the remaining Shares not purchased by the Corporation. Such offer shall be deemed to have been made upon the earlier of (i) the expiration of the time within which the Corporation was to furnish notice of acceptance, or (ii) the mailing by the Corporation of its notice of acceptance with a copy to the other Shareholders.

(e) The party to whom the Reoffer is determined to have been made shall have a period of thirty (30) days from the time to the Reoffer to determine whether or not he will accept such Reoffer as to all or any part of the Shares. The party electing to accept such Reoffer shall, within the said period of thirty (30) days, so signify in writing and send by registered mail to the Shareholder making the offer, and specifying the Closing Date. The party to whom the Reoffer is made shall have the right to accept as to all or any portion of the Shares.

(f) If any party to whom a Reoffer is made determines to purchase less than all of the Shares offered to him by such Reoffer, then the other remaining Shareholder may purchase such Shares as are not purchased by the other party by sending a Notice to that effect, in writing, by registered or certified mail, to the Selling Shareholder within fifteen (15) days from the date the remaining party receives Notice that the other party has chosen not to exercise the right to purchase all of the Shares offered to him under subparagraph "(e)" of this

-5-

paragraph "3". In such event, all of the other terms and conditions will be followed with the same force and effect as if the parties were proceeding in accordance with subparagraph "(e)" hereof.

(g) Payment for the Shares elected to be purchased shall be at the price and in the manner set forth in paragraph "6" hereof.

(h) If the remaining Shareholder or Shareholders, as the case may be, does not elect to purchase the Shares offered to him, or elects to purchase a number of Shares less than reoffered to him, such unaccepted reoffered Shares shall thereafter be free from the restrictions and provisions of this agreement for a period of six (6) months following the Reoffer, and the offeror may, within said six (6) month period, dispose of same in any manner deemed appropriate by him. If any of such Shares of stock thus freed from restriction shall thereafter be acquired, held or owned by any of the parties to this agreement, then and in every such event, each and all of the said Shares shall thereafter become subject to the restrictions and provisions of this agreement.

(i) In the event the selling Shareholder shall desire to sell such Shares to a third party during the aforesaid six (6) month period, such selling shareholder shall, by written notice, furnish to the Corporation and to the remaining Shareholders the name of the prospective purchaser and all of the terms and conditions upon which the sale is proposed. For a period of thirty (30) days thereafter, the Corporation and/or the remaining Shareholders shall have the right, upon written notice to the Selling Shareholder, to purchase such Shares upon the same terms and conditions as that offered by the third party; it being understood that the Corporation and/or the remaining Shareholders (as the case may be) shall only be required to meet the terms and conditions of the third-party offer which are set forth in money terms only.

(j) It shall be a condition to the transfer to and acquisition by any contemplated transferee that such transferee agree to be bound by the provisions of this agreement and execute such instruments providing therefor as counsel for the Corporation deems necessary.

4. Sale In The Event Of Voluntary Or Involuntary Termination of Employment

In the event that any Shareholder shall voluntarily terminate his employment with the Corporation, or in the event their employment is terminated by the Corporation, either of such events shall automatically constitute an offer, effective the date of termination, by such party to sell all of

-6-

his Shares in the Corporation in the manner set forth in paragraph "3" hereof and paragraph "6" hereof, except that the purchase price for such party's Shares shall be fixed in the manner set forth in paragraph 6 hereof.

5. <u>Demise of a Shareholder</u>

In the event of the death of any Shareholder, the estate of the deceased Shareholder, or any legatee or distributee upon whom such Shares may devolve, shall be deemed to offer for sale all of said Shares to the Corporation or to the surviving Shareholders, who shall purchase same, upon the same terms and conditions and at the price provided in paragraph "6" hereof. Such offer shall be deemed to have been made upon notification to the Corporation and the surviving Shareholders or qualification of the representative of the estate of the deceased Shareholder.

6. <u>Purchase Price, Closing and Manner of Payment</u>

(a) The purchase price per share of the Shares sold pursuant to paragraphs "3" and "5" hereof shall be at a price per share as determined by the accountant regularly employed by the Corporation, and said accountant shall, within thirty (30) days after such referral, determine the book value of the Corporation, and such determination of book value by the accountant shall be binding upon the parties hereto.

(b) For the purpose of this agreement, "book value" to be determined by the Corporation's accountant shall be the assets of the Corporation less its liabilities, but excluding the name "Romantics" which shall have no value for purposes of this computation; all determined in accordance with generally accepted accounting principles consistently applied and used by the accountant in determining the financial affairs of the Corporation.

In the event the Selling Shareholder shall not agree with the "book value" determined by the Corporation's accountant, the Selling Shareholder shall have the right to have a certified public accountant designated by the Selling Shareholder to review the determination of the Corporation's accountant. If after such review, the Corporation and the Selling Shareholder do not agree on the "book value", then such dispute shall be submitted to arbitration in Detroit, Michigan, in accordance with the rules and regulations of the American Arbitration Association then in effect and the decision of the arbitrators shall be binding upon the Corporation and the Selling Shareholder. The Corporation shall choose one arbitrator, the Selling Shareholder shall choose one arbitrator, and the two chosen shall choose the third arbitrator. The Corporation and the Selling Shareholder shall each bear fifty (50%) perent of the costs incurred in connection with the arbitration.

-7-

(c) <u>The Closing</u>

(i) In the case of a sale to either the Corporation or the remaining Shareholders during the lifetime of a selling shareholder pursuant to paragraph 3 or 4 hereof, the closing shall take place at 10:00 A.M. at the offices of the Corporation within twenty-one (21) days after acceptance of the offer by the Corporation, or twenty-one (21) days from acceptance of the re-offer by the remaining Shareholders.

(ii) In the case of a sale in the event of death of a Shareholder pursuant to paragraph 5 hereof, the closing shall take place at 10:00 a.m. at the offices of the Corporation within thirty (30) days after receipt of the notification provided for in said paragraph 5.

(e) <u>Payment of Purchase Price</u>

(i) The parties hereto do further mutually agree that the following provisions for payment shall apply in the event of the election to purchase all or any portion of the Shares offered for sale through or by reason of any of the contingencies hereinabove described:

On the closing, the purchaser, in accordance with the terms hereof, shall pay to the Selling Shareholder, or to the estate or personal representative of the deceased Shareholder, as the case may be, by cash or certified check, a sum equivalent to fifty (50%) percent of the purchase price of the shares to be thus acquired. Upon receipt of such down payment by the Selling Shareholder, the certificate or certificates representing the shares agreed to be purchased shall be duly endorsed in blank and delivered to the then attorneys for the Corporation, or the Shareholders, or to both, as the case may be (with transfer tax stamps annexed), to be held in escrow pending the completion of payment in full of the agreed purchase price. During such times as the shares, or any of them, are retained in escrow pursuant hereto, any dividends paid on those shares shall likewise be retained in an interest-bearing account, to be turned over at the time the escrow is released, to the person receiving the shares out of said escrow. During such time as the shares are being thus held in escrow, and while the purchaser(s) is (are) not in default, all voting privileges appurtenant to such shares may be exercised by said purchaser(s). Thereafter, and within one hundred eighty (180) days the balance shall be paid in full.

In the event of default in payment of any of the installments, which default shall continue uncured for a period of fifteen (15) days, the shares shall be returned to the Selling Shareholder by reason of the default and he shall thereafter be free of the restrictions of this agreement. The

-8-

return of shares pursuant hereto shall not preclude the Selling Shareholder from retaining any sums paid to him.

### (f) Funding of Purchase Price

In the event that the parties hereto elect to fund or finance any aspect of their obligation to acquire the shares of any deceased party to this Agreement, they may do so through insurance. In such event, each agrees that he will permit his life to be insured in favor of one or more of the other parties to this Agreement. Anything in paragraph "6(e)" hereof notwithstanding, in the event the parties have elected to fund the purchase of Shares of a deceased party through insurance, that portion of the purchase price represented by available insurance proceeds shall be paid in one lump sum on the closing date (or within 30 days after receipt by the Corporation if not received by the closing date) and any remaining balance of the purchase price not represented by insurance shall be paid in two (2) equal consecutive semi-annual installments (the "Installments") commencing with the first day of the month following the closing. The Installments shall be represented by a series of non-negotiable, non-interest bearing promissory notes. The Shares to be purchased shall be delivered to purchaser against payment as herein provided and no escrow as to such Shares shall apply.

### 7. Issuance of Further Shares By The Corporation

The Corporation covenants and agrees, and each of the Shareholders agree, as one of the considerations of this agreement, that the Corporation will not issue, nor with the Shareholders cause the Corporation to issue, any additional Shares (regardless of class), or any right, subscription, warrant, option or convertible security, without the prior consent in writing of all Shareholders. The foregoing shall apply so long as each of the Shareholders continues to own all of his Shares in the Corporation.

### 8. Legend of Share Certificates

Upon the execution of this agreement, the parties hereto shall cause the certificates of Shares of the Corporation issued to each of them to be endorsed as follows:

> "The Shares of stock represented by this Certificate are held subject to the terms and conditions of a Shareholders agreement dated January 5, 1984 among the Corporation and all its Shareholders restricting the sale, assignment, transfer, pledge, gift or other disposition or encumbrance of the shares of this Corporation.

-9-

9. **Restrictive Covenant**

(a) So long as each signatory hereto is a Shareholder, such party shall not, without the prior written consent of both the Corporation and the other parties hereto, directly or indirectly become an officer, director, employee, consultant, or shareholder of any corporation, partnership, joint venture or other business entity which engages in any business which is the same or similar to that of the Corporation or not competitive.

10. **"Key Man" Insurance**

(a) Each of the parties agrees to accurately complete such application(s) for "key man" cross purchase or disability insurance as the Corporation may elect to purchase or the other party may request, and to submit to such physical examinations and to furnish such information as any proposed insurance carrier may request. It is understood that any policy or "key man" insurance which the Corporation may obtain upon the life of any or all of the parties shall be for the sole benefit of the Corporation, which shall also be the sole owner of any such policy.

11. **Termination**

This agreement will terminate on:

(a) The written agreement of all parties to this agreement; or

(b) The acquisition of all Shares in the Corporation by any of the parties hereto; or

(c) The Corporation being subject to bankruptcy under Federal Law, or an assignment of all assets to a trustee for the benefit of creditors; or

(d) The occurrence of a deadlock in a vote of the Shareholders upon a matter deemed by the Shareholders holding 50% or more of the voting power to be substantive and the vote by those Shareholders for dissolution of the Corporation. Termination will thereupon be effective on the date of dissolution. Upon the occurrence of such vote, none of the Shareholders shall thereafter have any rights in or to the name "Romantics".

-10-

### 12. Interpretation

The validity, interpretation and performance of this agreement shall be governed by and construed in accordance with the substantive law of the State of Michigan without regard to conflicts of law.

### 13. Integration of Agreement

This agreement and the terms and provisions herein supersede any and all prior oral and written agreements between the parties hereto, and consititutes the entire agreement between the parties hereto.

### 14. Warranties and Representations

No representation or warranty has been made by any party hereto to any other party, and all representations, warranties or otherwise not expressly contained herein are specifically disclaimed.

### 15. Severability of Provisions

If any part of this agreement or the application thereof if any circumstance is declared invalid, the application thereof in other circumstances and the remainder of this agreement shall not be affected by such invalidity; provided, however, that the said application and the remainder of this agreement shall continue to substantially reflect the intent of the parties as indicated herein.

### 16. Modification

No agreement or understanding which modifies or alters this agreement, or any part thereof, shall be binding upon any party hereto, unless it is in writing and signed by all of the parties hereto.

### 17. Parties Bound

This agreement and all of its terms, covenants and provisions, insofar as applicable, shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns.

### 18. Notices

Any notice required or permitted to be given under this agreement shall be sufficient if in writing and if sent by registered mail, return receipt requested, to the party entitled to receive such notice, at the address appearing on the face hereof, or such other address as the parties may have specified

most recently in writing to one another. All notices to Corporation shall be sent to Shukat & Singer, Esqs., 111 West 57th Street, New York, New York 10019.

### 19. Waiver of Breach

Each party may specifically, but only in writing, waive any breach of this agreement by any other party hereto, but no such waiver shall be effective without the written concurrence by the other non-breaching parties. No such waiver shall be deemed to constitute a waiver of similar, or other, breaches by any or all of the parties hereto.

### 20. Execution

This agreement may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals, all on the day and year first above written.

(Corporate Seal)

Attest:

_____
JAMES MARINOS

_____
MICHAEL SKILL

_____
GEORGE CANLER

_____
WALTER PALAMARCHUK

MASTER BEAT, INC.

By: _____
President

-12-