UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL SKILL,

               Plaintiff,

v.

WALTER PALAMARCHUK, and
MASTER BEAT, INC.

               Defendants.

Case No. 2:23-cv-13206-LJM-KGA

Honorable Laura Michelson

Magistrate Judge Kimberly G. Altman

**PLAINTIFF MICHAEL SKILL'S RESPONSE IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED ............................................................. iii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ............................. iv

TABLE OF AUTHORITIES.................................................................. vi

INTRODUCTION ....................................................................................1

BACKGROUND ....................................................................................2

LEGAL STANDARD ............................................................................4

ARGUMENT ........................................................................................4

   I.   SKILL'S CLAIMS ARE NOT SUBJECT TO RES JUDICATA. ....................4

   II.   DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED. ............10

      A.  Skill's §487 Claim (Count II) Is Properly Alleged..................................11

      B.  Skill's Breach of Contract Claim (Count V) is Properly Alleged. ..........17

      C.  Skill's Fiduciary Duty Claim (Count IV) is Properly Alleged................19

      D.  Skill's Right of Publicity Claim (Count VI) is Properly Alleged............20

      E.  Skill's False Designation Claim (Count VII) Is Properly Alleged..........22

      F.  Defendants Present No Substantive Arguments as to Several Claims....23

   III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED.................................................................................................24

CONCLUSION .....................................................................................25

**STATEMENT OF ISSUES PRESENTED**

1.  Are certain causes of action or all of Plaintiff, Michael Skill's Complaint barred under the doctrine of res judicata?

    Plaintiff answers: No.

    Defendants answer: Yes.

    This Court should answer: No.

2.  Should certain causes of action or all of Plaintiff, Michael Skill's Complaint be subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 56?

    Plaintiff answers: No.

    Defendants answer: Yes.

    This Court should answer: No.

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

Plaintiff relies upon Federal Rules of Civil Procedure 12(b)(6) and 56, as well as the additional authorities cited in his brief to support why this Court should deny Defendants' Motion to Dismiss or, in the alternative, For Summary Judgment. In particular:

- As to why this Court should deny Defendants' motion to dismiss because of res judicata:

  o *Adair v. State*, 680 N.W.3d 386 (Mich. 2004);

  o *Banks v. LAB Lansing Body Assembly*, 720 N.W.2d 756 (Mich. Ct. App. 2006).

- As to why this Court should deny Defendants' motion to dismiss under Rule 12(b)(6):

  o Count II – Skill's MCL 450.1487 Claim

    ▪ MCL 450.1487(3);

    ▪ *Hammoud v. Advent Home Medical Inc.*, No. 340502, 2018 WL 1072988 (Mich. Ct. App. Feb. 27, 2018);

    ▪ *N. Oakland Cnty. Bd. of Realtors v. Realcomp, Inc.*, 572 N.W.2d 240 (Mich. Ct. App. 1997).

  o Count IV – Skill's Breach of Fiduciary Duty Claim

    ▪ *Murphy v. Inman*, 983 N.W. 2d 354 (Mich. 2022);

    ▪ *Techner v. Greenberg*, 553 F. App'x 495 (6th Cir. 2014).

iv

- o Count V – Skill's Breach of Contract Claim

    - ▪ *Howard v. LM Gen. Ins. Co.*, 5 N.W.3d 46 (Mich. Ct. App. 2023).

- o Count VI – Skill's Right of Publicity Claim

    - ▪ *Parks v. LaFace Records*, 329 F.3d 437 (6th Cir. 2003);

    - ▪ *ETW Corp. v. Jireh Publishing, Inc.*, 332 F.3d 915 (6th Cir. 2003).

- o Count VII – Skill's False Designation Claim

    - ▪ *ETW Corp. v. Jireh Publishing, Inc.*, 332 F.3d 915 (6th Cir. 2003);

    - ▪ *Arnold v. Treadwell*, 642 F. Supp. 2d 723 (E.D. Mich. 2009).

- • As to why Defendants' motion for summary judgment should be denied:

    - o *Plott v Gen Motors Corp, Packard Elec Div*, 71 F.3d 1190, (6th Cir 1995);

    - o *Oakmont Livonia, LLC v Rhodium Cap Advisors LLC*, No 22-11128, 2022 WL 19001843 (E.D Mich. Sept. 26, 2022).

# TABLE OF AUTHORITIES

**Cases**

*Abdul-Jabbar v. General Motors Corp.*,
    85 F.3d 407 (9th Cir. 1996) .................................................................22

*Adair v. State*,
    680 N.W.2d 386 (Mich. 2004) ................................................... 4, 5, 6

*Ali v. Playgirl, Inc.*,
    447 F. Supp. 723 (S.D.N.Y. 1978) .......................................................22

*Arnold v. Treadwell*,
    42 F. Supp. 2d 723 (E.D. Mich. 2009) ................................................23

*Bafna v. Echo Valley Condo Assoc.*,
    No. 353785, 2021 WL 5021749 (Mich. Ct. App. Oct. 28, 2021) .......15

*Banks v. LAB Lansing Body Assembly*,
    720 N.W.2d 756 (Mich. Ct. App. 2006). ..................................... 5, 7, 8

*Bennett v. Mackinac Bridge Auth.*,
    808 N.W.2d 471 (Mich. Ct. App. 2010) ...............................................4

*Bowens v. Aftermath Entm't*,
    254 F. Supp. 2d 629 (E.D. Mich. 2003) ..............................................20

*Christner v. Anderson, Nietzke & Co., PC*,
    444 N.W.2d 779 (Mich. 1989) ............................................................20

*ETW Corp. v. Jireh Publishing, Inc.*,
    332 F.3d 915 (6th Cir. 2003) ...................................................... 21, 22

*Gionfriddo v. Major League Baseball*,
    94 Cal. App. 4th 400 (2001) ...............................................................20

*Hammoud v. Advent Home Medical Inc.*,
    No. 340502, 2018 WL 1072988 (Mich. Ct. App. Feb. 27, 2018) .......13

*Hauf v. Life Extension Found.*,
547 F. Supp. 2d 771 (W.D. Mich. 2008)............................................................20

*Howard v. LM Gen. Ins. Co.*,
5 N.W.3d 46 (Mich. Ct. App. 2023) ..................................................................18

*In re Pardee*,
475 N.W.2d 870 (Mich. Ct. App. 1991) ...............................................................5

*Labor Council, Mich. Frat. Ord. of Police v. City of Detroit*,
525 N.W.2d 509 (Mich. Ct. App. 1994) ...............................................................4

*Mich. Nat'l Bank v. Mudgett*,
444 N.W.2d 534 (Mich. Ct. App. 1989) ............................................................20

*Murphy v. Inman*,
983 N.W. 2d 354 (Mich. 2022) ................................................................... 19, 20

*N. Oakland Cnty. Bd. of Realtors v. Realcomp, Inc.*,
572 N.W.2d 240 (Mich. Ct. App. 1997) ....................................................... 15, 16

*Oakmont Livonia, LLC v Rhodium Cap Advisors LLC*,
No 22-11128, 2022 WL 19001843 (E.D Mich. Sept. 26, 2022).........................24

*Pallas v. Crowley, Milner & Co.*,
33 N.W.2d 911 (Mich. 1948) ............................................................................20

*Parks v. LaFace Records*,
329 F.3d 437 (6th Cir. 2003)..............................................................................20

*Pittiglio v. Mich Nat. Corp.*,
906 F. Supp. 1145 (E.D. Mich. 1995).................................................................19

*Plott v Gen Motors Corp, Packard Elec Div*,
71 F.3d 1190 (6th Cir 1995)..............................................................................24

*Ruffin-Steinback v. dePasse*,
82 F. Supp. 2d 723 (E.D. Mich. 2000)................................................................22

*Pandemonium, Inc. v. Northcrest Dev., LLC*,
  No. 350526, 2021 WL 3117210 (Mich. Ct. App. July 22, 2021) ........................9

*Techner v Greenberg*,
  553 F. App'x 495 (6th Cir. 2014).........................................................................19

*Touchwerx, Inc. v. Gatt*,
  No. 346342, 2020 WL 703554 (Mich. Ct. App. Feb. 11, 2020)........................15

*Waits v. Frito–Lay, Inc.*,
  978 F.2d 1093 (9th Cir. 1992)..............................................................................22

*Windsor v. The Tennessean*,
  719 F.2d 155 (6th Cir. 1983)..................................................................................4

*Woodworth v. Old Second Nat. Bank*,
  117 N.W. 893 (Mich. 1908) ................................................................................16

**Statutes**

MCL 450.1487 .........................................................................................................10
MCL 450.1487(3) ..............................................................................................10, 11

**Rules**

Fed. R. Civ. P. 12(b)................................................................................................23

**Treatises**

6 Mich. Civ. Jur. Corporations § 263 ....................................................................10
Restatement (Third) of Unfair Competition, § 46)..........................................21

**INTRODUCTION**

Defendants spend considerable time casting Skill as a disgruntled "former member" of the Romantics who should be precluded from bringing his claims because his alleged misdeeds were addressed in an earlier lawsuit they filed against him (the "Prior Action"). Not only are their characterizations false (Skill remains a member of the band and owns half of Master Beat), but the claims in this action also are unrelated to and distinct from those pressed by Defendants in the Prior Action. This Court should not allow Defendants to distract from this litigation with reference to actions and proceedings that have no bearing on the matters before it.

Defendants' res judicata defense, for example, seeks to preclude Skill from maintaining his claims against them because the Prior Action generally concerned Skill's relationship with Palamarchuk as co-owners of Master Beat. This defense is meritless, however, since the operative facts in the present lawsuit occurred *after* judgment was entered in the Prior Action and arise out of distinct transactions.

The remainder of Defendants' motion is comprised of muddled attacks on certain facts alleged in the Complaint without clarity as to which causes of action are sought to be dismissed based on these challenges. Some attacks simply *deny* the allegations themselves, which is improper on a motion to dismiss, and other attacks are premature to the extent the motion requests entry of summary judgment before Defendants have even answered.

Skill therefore requests the opportunity to properly address his grievances against Defendants through this litigation and rejects Defendants' attempt to dismiss this case simply because they previously sued Skill for wholly different reasons.

## BACKGROUND

Skill filed this lawsuit to gain transparency into the financial endeavors of Master Beat following entry of a judgment in state court (the "Prior Action") that stripped him of his role as a director of the company. Since that time, and despite the fact Skill continues to own 50% of Master Beat, Palamarchuk stopped providing Skill with the same details concerning Master Beat's operations as he had previously provided to Skill, arguing that Skill was not entitled to this information as a mere shareholder of the company. ECF No. 1, PageID.13-14, ¶¶48-50.

Palamarchuk engaged in a variety of activities following entry of judgment in the Prior Action, which led Skill to file this lawsuit. As alleged in the Complaint, over the past two years, Palamarchuk, as sole director of the company: (a) changed the nature and substance of the accountings he authorized Master Beat to provide to Skill; (b) wrongfully transferred Master Beat funds to himself without conferring a similar benefit to Skill; (c) managed the company in an unfair and oppressive manner towards Skill; (d) engaged in live performances using Skill's unauthorized image and without depositing all of the revenues he received from these performances into the Master Beat account; (e) authorized the release of new "Romantics" music

without notice provided to Skill; and (f) concealed from Skill the fact that he redirected valuable opportunities away from the company, and Skill, for Palamarchuk's financial benefit. ECF No. 1, PageID.13-14, ¶¶48-50; PageID.16-18, ¶¶55-58; PageID.18-19, ¶62; PageID.18, ¶¶59-61; PageID.19-34.

In his Complaint, Skill presents a candid account of his acrimonious relationship with Palamarchuk and their many disagreements over the years. He is forthright in acknowledging his misguided attempts at self-help in 2021, when Palamarchuk refused to communicate with him, failed to hold shareholder meetings and denied Skill access to the company's financial records. While Skill was frustrated with Palamarchuk at that time, his attempts at self-help clearly did not fix the issues between them. Rather, it resulted in the filing of the Prior Action and eventually the entry of judgment against him. This was an expensive way for Skill to learn that, no matter how unfair one shareholder may be to another, there are proper (and improper) ways to address such issues. Self-help was not the appropriate means of resolving the parties' conflicts.

Skill learned his lesson, and when confronted with Palamarchuk's unfair, oppressive and fraudulent actions following entry of judgment in the Prior Action, he did not again resort to self-help. Rather, he filed this lawsuit in an effort to protect his interests as a 50% owner of Master Beat.

## LEGAL STANDARD

Skill adopts the legal standards as set forth in Defendants' motion. ECF No. 11, PageID.89-90. Skill emphasizes that in evaluating a Rule 12(b)(6) motion to dismiss, the factual allegations of the Complaint must be accepted as true. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983).[1] Further, the Complaint must be construed in a light most favorable to the Plaintiff. *Pitzer*, 2005 WL 1838450, *3.

## ARGUMENT

## I.   SKILL'S CLAIMS ARE NOT SUBJECT TO RES JUDICATA.

Res judicata operates as a bar to the re-litigation of claims only when such claims arise from the ***same transaction***. *See Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004). Thus, even when there is a final decision in one matter, "[r]es judicata does not bar a subsequent action between the same parties or their privies when the facts have changed or new facts have developed." *Bennett v. Mackinac Bridge Auth.*, 808 N.W.2d 471, 483 n.10 (Mich. Ct. App. 2010) (recognizing that "a change in facts and circumstances sufficient to overcome the applicability of res judicata"); *Labor Council, Mich. Frat. Ord. of Police v. City of Detroit*, 525 N.W.2d 509, 511 (Mich. Ct. App. 1994) (holding that res judicata did not apply to bar a current action because "a change in circumstances after the [earlier action warranted] full review of the dispute and render[ed] the doctrine of res judicata inapplicable"); *In re Pardee*, 475

---

[1] Throughout, unless otherwise noted, all emphases and alterations are added, and all internal citations and footnotes are omitted.

N.W.2d 870, 873-74 (Mich. Ct. App. 1991) ("new evidence and changed circumstances" precluded res judicata).

In this matter, judgment was entered in the Prior Action on July 18, 2022. The Complaint alleges that Palamarchuk violated the parties' Shareholder Agreement by not advising Skill of various corporate activities in the two years since entry of the judgment, and by refusing to subject any of his actions to an affirmative shareholder vote. ECF No. 1, PageID26-28. The Complaint also alleges Palamarchuk's recent activities negatively impact Skill's interests as a co-owner, thus breaching his fiduciary duty. ECF No. 1, PageID.24-26. Defendants, therefore, cannot use res judicata as a shield against liability. On the contrary, new facts have developed, and separate transactions have been engaged in since the entry of judgment in Prior Action, which makes res judicata unapplicable.

Res judicata also does not preclude claims based on facts that developed during the Prior Action because Skill's claims here arise from[2] a different set of transactions. Michigan courts apply the "same transaction" test, which bars claims "arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair*, 680 N.W.2d at 396. The "assertion of different

---

[2] Defendants misstate the law by suggesting that all claims "that ***accrue*** before entry of final judgment" must be litigated or else are precluded. This is not the law; rather all claims "***arising out*** of the same transaction" must be litigated or are precluded. *Banks v. LAB Lansing Body Assembly*, 720 N.W.2d 756, 758 (Mich. Ct. App. 2006).

kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief." *Id.* at 397. Accordingly, courts are instructed to pragmatically review whether a factual grouping constitutes a single transaction by considering whether the facts of each case "are related in time, space, origin or motivation, [and] whether they form a convenient trial unit." *Id.*

Defendants argue in favor of res judicata by suggesting:

> Here, the single operative facts that are related in time, space, origin and motivation, and which form a convenient trial unit, are generally that [*sic*] the relation between Palamarchuk and Skill, as directors of and shareholders of Master Beat."

ECF No. 11, PageID.93.  Defendants certainly prefer this characterization of the "transaction," since it could preclude any future claims between the parties arising out of their general association. But this is far too broad a relationship to be considered the "operative transaction." On the contrary, Skill's claims are not related in time, space, origin, or motivation to those in the Prior Action.

First, Skill's requested relief is ***not related in origin*** to the operative facts underlying the Prior Action. This is evident when one compares the allegations fundamental to the pleadings in each case. In this case, Skill's allegations originate from Palamarchuk's own misconduct following entry of judgment in the Prior Action, including the conduct outlined in detail in the Background Section, above. *Supra,* page 2. This relief does not originate from the same facts underlying the Prior Action, which stem from Skill's attempts at self-help through the withdrawal of

6

funds from a bank account and his attempts to receive royalty payments directly from third parties. ECF No. 1, PageID.10-11, ¶¶37-39.

In considering the origins of each case, *Banks v. LAB Lansing Body Assembly* is illustrative. 720 N.W.2d 756 (Mich. Ct. App. 2006). The court there permitted the plaintiff to pursue a second action against his employer arising out of a second injury suffered during his employment. "Although the claims originated from the same relationship," the court explained, "the injuries originated from two totally separate incidents." *Id.* at 758. Similarly, here, Skill's claims originate from wholly distinct facts than those that formed the basis of the Prior Action.

Skill's relief is also ***not related in motivation*** to Defendants' claims in the Prior Action. Defendants commenced the Prior Action to reclaim money Skill received through attempts at self-help, whereas Skill initiated the present matter to stop Palamarchuk's recent, oppressive conduct as Master Beat's sole officer and director, and to the extent the parties are unable to resolve their fundamental differences, to possibly dissolve Master Beat.

Defendants improperly conflate these vastly differing motivations by arguing that some of Skill's causes of action are titled similarly to those Defendants had pursued in the Prior Action. ECF No. 11, PageID.92. This does not mean, however, that Skill's current claims against Palamarchuk are sufficiently related in motivation to Defendants' prior claims. On the contrary, when one shareholder is alleged to have

7

breached duties owed to another, the other shareholder has not inherently breached his own duties, nor does it follow that the non-breaching shareholder is forever exempt from liability if he subsequently commits his own breaches. While the parties have undisputedly had many disagreements over the years, the operative facts of this lawsuit are unrelated in motivation to those that led Defendants' Prior Action.

Finally, the operative facts supporting each action are ***not related in time and space***. The facts underlying the Prior Action occurred around the time that lawsuit was commenced, whereas Skill's alleged injuries here— which are ongoing as of the filing of this brief—arise out of distinct events that did not begin until more than a year *after* the transactions at issue in the Prior Action, including, for example, Palamarchuk's transfer of funds to himself following judgment in the Prior Action, his recent live performances, and his refusal to provide Skill with any requested information concerning the company's endeavors following entry of judgment. *See supra,* Background Section. These actions post-date judgment in the Prior Action and illustrate how the facts underlying Skill's current claims are unrelated in time or space to the facts underlying the Prior Action. *See Banks,* 720 N.W.2d at 757 ("a completely different injury to different body parts suffered a later date would have required adjournment of a case already ripe for adjudication so that plaintiff could assemble information from the different doctors treating his neck injury").

It therefore follows that the operative facts in the Prior Action and the current action ***do not form a convenient trial unit***.  Even with regard to facts that might have developed during later stages of the Prior Action, this Court should assess whether Skill, in using reasonable diligence, could have feasibly discovered and raised those claims during the Prior Action and then practicably pursued claims arising from those facts as part of the Prior Action. *See Pandemonium, Inc. v. Northcrest Dev.*, LLC, No. 350526, 2021 WL 3117210, *3 (Mich. Ct. App. July 22, 2021) ("[R]easonable diligence must be considered in light of th[e] circumstance[s.]"). As just one example, in 2023, Skill became aware that Palamarchuk had received more than $23,000 in royalty payments from K-Tel Music LP on June 7, 2022, which Palamarchuk then transferred to himself on June 13, 2022 (one month before entry of judgment in the Prior Action). Skill attempted to raise this issue after the judgment, before both the trial court and appellate court in the Prior Action. ECF No. 11-12, Page ID. 490-507; ECF No. 11-15, PageID.526-75. The trial court, however, denied Skill's motion because the Prior Action was already on appeal.[3] ECF No. 11-17, PageID.662-63. The appellate court likewise denied Skill's motion to supplement the record without prejudice. ECF No. 11-14, PageID.525. Thus, when Skill became privy to facts demonstrating that

---

[3] The trial court stated "[s]imply put, this Court has no jurisdiction to grant the requested relief. . . [B]inding Michigan jurisprudence divests this Court of any jurisdiction at this time. ECF No. 11-17, PageID.662.

Palamarchuk engaged in the same wrongful conduct he accused Skill of committing, it was procedurally too late to present those facts in the Prior Action.

In sum, any injury or grievance pursued (or even available) to the parties arising out of one act of misconduct does exculpate either party from liability for their subsequent misconduct. If Skill again engaged in self-help following the Prior Action, Palamarchuk would have grounds to pursue a new claim against him. So too must Skill be able to pursue claims arising from Palamarchuk's recent misconduct, particularly when that misconduct arises out of an entirely new series of transactions from those at issue in the Prior Action. For these reasons, Defendants' motion to dismiss the Complaint based on the doctrine of res judicata should be denied.

## II.    **DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED.**

Defendants' 12(b)(6) motion does not specify which causes of action they seek to dismiss or the bases upon which dismissal of each claim is sought.  Rather, Defendants take aim at certain allegations in the Complaint, and either challenge their veracity or argue that they should not form the basis for relief in this case. ECF No. 11, PageID.95-101. Defendants' motion also fails to articulate any basis upon which to dismiss several causes of action. Thus, for the following reasons, Skill requests this Court deny Defendants' motion in its entirety.

### A.   Skill's §487 Claim (Count II) Is Properly Alleged.

Primary among Skill's requested relief is his demand to inspect Master Beat's books and records pursuant to MCL 450.1487. ECF No. 1, PageID.20-22, Count II. A court may order a corporation to permit shareholders to inspect the corporation's books and records on conditions and with limitations as the court may prescribe. MCL 450.1487(3); 6 MICH. CIV. JUR. CORPORATIONS § 263. If a shareholder seeks to inspect the corporation's records and has established compliance as to the form and manner of making a demand for the inspection of documents, the burden of proof is on the *corporation* to establish the inspection is for an improper purpose or that the records sought are not directly connected with the purpose. MCL 450.1487(3).

In the present matter, Skill alleges that, following entry of judgment in the Prior Action, Palamarchuk became the only person in control of Master Beat's finances, and in this role, decides the timing and amount of distributions to be made to shareholders (i.e. Skill and himself). ECF No. 1, PageID.13, ¶48. He also alleges that "over the past eighteen months . . . Palamarchuk completely stopped sending such detailed information to Skill, claiming that even though Skill owned half of the company, he was not entitled to this information." ECF No. 1, PageID. 14, ¶49.

Skill further explains in his Declaration that Palamarchuk's refusal to provide details concerning the company's operations has been exacerbated by (i) public

announcements concerning the release of new Romantics music without his knowledge, (ii) use of Skill's image to advertise live performances in which Palamarchuk was participating but Skill was not, and (iii) Skill having learned that a new bank account had been set up by Master Beat without informing Skill of the nature or purpose of this account. Skill Dec., attached hereto as **Ex. 1**, ¶¶9-18.

The combination of the above facts led Skill to issue a §487 letter to Master Beat in December 2023, in which he requested the opportunity to inspect the company's records to obtain clarity and transparency concerning the company's financial endeavors. *See* Dec. 1, 2023 letter, attached hereto as **Ex. 2**. This request sought inspection of the company's balance sheet, a statement of income, a statement of source and application of funds pursuant to §487(1), and five years of documents detailing (i) corporate income and expenses; (ii) distributions made to shareholders; (iii) bank statements; (iv) contracts entered into by Master Beat; (v) tax returns; (vi) payments of money deposited into third-party bank accounts; and (vii) records otherwise maintained by the bookkeeper in the ordinary course of business. *Id.*

In response to Skill's §487 request, Master Beat stated it previously sent Skill the documents he sought. *See* Dec. 8, 2023 letter, attached hereto as **Ex. 3**. In reality, Master Beat had only sent Skill a copy of its 2022 balance sheet and profit-and-loss report, which showed the company's aggregate financial figures with no detail from which to discern what activities, transactions or decisions Master Beat had engaged

in over the past year. *See* partially redacted copy of the 2022 balance sheet and P&L report, attached hereto as **Ex. 4**.[4] Glaringly absent from Master Beat's production is a copy of its (i) statement of income or (ii) statement of source and application of funds, both of which Master Beat maintained in the ordinary course of its business and was required to produce in accordance with §487(1) without further discussion or debate.

Master Beat also refused to produce copies of its bank records or documents that would have provided detail regarding its income and expenses from 2022 to the present. **Ex. 3**. Curiously, Master Beat concedes it provided these records to Skill for the period spanning from 2018 through 2022, but it did not explain why it refused to tender similar records for the last two years. *Id.* In its motion, Master Beat suggests Skill is not entitled to inspect these records anymore because he is merely a shareholder and not a director. ECF No. 11, PageID.100. While a state court stripped Skill of his director title, it did not deprive Skill of his *ownership* interest in the company, and it is in his capacity as a ***shareholder*** that Skill maintains the right to inspect the company's records pursuant to §487. *Hammoud v. Advent Home Medical Inc.*, No. 340502, 2018 WL 1072988, *5–6 (Mich. Ct. App. Feb. 27, 2018) (holding shareholder request properly sought inspection of records and ordered corporation

---

[4] The financial figures on this document are redacted to maintain the confidential nature of this information.

to produce bank statements pursuant to §487). Master Beat indicated that "summary reports provided to Mr. Skill "should suffice," and that it "will transmit the year-end 2023 documents upon completion of the year and the closing of the books." **Ex. 1**, ¶23; **Ex. 3**. As explained above, however, these reports provide no clarity as to the transactions Master Beat has engaged in over the past two years. Thus, by suggesting these are the only documents Skill would receive on a going-forward basis, Master Beat makes clear it has no intention of providing Skill with insight into Palamarchuk's management of a company Skill owns half of.

As to the remainder of Skill's requests, Master Beat takes the position that Skill has not provided a "proper purpose" to inspect these records. ECF No. 11, PageID.99. It contends that Skill sought review of these documents based only on "paranoia and unfounded speculation." *Id*. This assertion, however, fails to accept the allegations of the Complaint as true, which states that Skill seeks to inspect Master Beat's records to obtain "clarity and transparency concerning the company's financial endeavors." ECF No. 1, PageID.22, ¶ 70; **Ex. 3**. For this reason alone, Master Beat's motion to dismiss should be denied.

Even if the Court were to consider whether Skill presented a proper purpose to support his records request, it should deny Master's Beat's motion because Skill's letter, Complaint, and Declaration demonstrate that Skill sought to inspect Master Beat's records for the proper purpose of monitoring the financial health of the

company to discern whether Palamarchuk is properly and fairly managing the company's affairs or if he has acted in a manner intended to benefit one shareholder over the other. **Ex. 2.** In considering whether Skill presented a "proper purpose," the Court may consider not only his §487 letter, but also the allegations of his Complaint and his supporting Declaration. *See Bafna v. Echo Valley Condo Assoc.*, No. 353785, 2021 WL 5021749, *5 (Mich. Ct. App. Oct. 28, 2021) ("If a plaintiff seeking records clarifies the purpose of its request in the context of litigation, whether via its complaint or an affidavit it submits in the litigation context, we see no reason the trial court should not consider those subsequent clarifications or reasons, just as it did in this case.").[5]

Michigan courts have held that the "proper purpose" requirement for the inspection of corporate records is satisfied where shareholders seek to inspect records to "'monitor the financial health of [the corporation].'" *N. Oakland Cnty. Bd. of Realtors v. Realcomp, Inc.*, 572 N.W.2d 240, 241 (Mich. Ct. App. 1997). As a

---

[5] *See also Touchwerx, Inc. v. Gatt*, No. 346342, 2020 WL 703554, *6 (Mich. Ct. App. Feb. 11, 2020) (reversing a trial court's dismissal of 487 claim when plaintiff's complaint contained additional allegations in support of the claim, which the court was required to accept as true); *Realcomp*, 572 N.W.2d at 243 ("although the plaintiff's alleged inspection purposes were 'arguably overbroad and nonspecific,' its subsequently submitted affidavit in support thereof set forth reasons for the requested inspection, which were sufficiently 'specific, limited in scope, and reasonably related' to plaintiff's interest as shareholder").

matter of first impression, the *Realcomp* court considered the parameters of what constitutes a "proper purpose" under §487, recognizing:

> [A] "proper purpose" is one that is reasonably related to the person's interest as a shareholder. . . Under the common law, a shareholder stated a proper purpose for an inspection ***by raising doubts whether corporate affairs had been properly conducted by the directors or management***, or by seeking election to the corporate board of directors. On the other hand, inspection requests to satisfy idle curiosity or aid a blackmailer were held not to be proper.
>
> *   *   *
>
> Although idle curiosity or mere speculation of mismanagement are insufficient to justify an inspection, ***we do not believe that the Legislature intended in enacting §487 to erect a formidable obstacle for shareholders in seeking an inspection of corporate records***.

*Id*. at 242. Thus, Skill presents a proper purpose for inspecting Master Beat's records, as his request is reasonably related to his interest as a shareholder and raises doubts as to whether Palamarchuk properly conducted the corporate affairs of the company.

This Court should reject Master Beat's argument that Skill should be wholly foreclosed from inspecting Master Beat's records simply because his request is allegedly overbroad. This is not the law. *See Woodworth v. Old Second Nat. Bank*, 117 N.W. 893, 895 (Mich. 1908) ("It was the duty of the officer upon request to exhibit to plaintiff such books as he was entitled to, although he called for more than he could rightfully demand, and the court was not justified in refusing him all the relief because he asked for more than he was entitled to."). Skill respectfully submits that the documents he requested are relevant to the purpose for which his inspection

16

is sought, and asks this Court to order these documents be produced in accordance with his original demand. However, to the extent this Court determines Skill's request is temporally overbroad, he is amenable to limiting the scope of his demand rather than outright dismissing his claims. As such this Court should deny Master Beat's motion.

### B.   Skill's Breach of Contract Claim (Count V) is Properly Alleged.

In his Complaint, Skill alleges the Shareholder Agreement is an enforceable contract between the parties, which Palamarchuk breached by, among other things, transferring money to himself without conferring a similar benefit to Skill, performing with his own band in violation of the agreement's restrictive covenant, and taking corporate actions without securing an affirmative positive vote of the shareholders. ECF No. 1, PageID.27, ¶¶ 83-84.

In response to Skill's claim that he performed live using the "Romantics" name in violation of Section 9 of the Shareholder Agreement (ECF No. 1, PageID.27, ¶84(e)-(g); ECF No. 1-1, PageID.46), Palamarchuk argues that Skill's "conjecture is wrong" and that he deposited all revenue from his live shows into Master Beat's account. ECF No. 11, PageID.100. As it concerns his 12(b)(6) motion, however, Palamarchuk must accept Skill's allegations as true and his motion to dismiss should be denied.

In response to Skill's claim that Palamarchuk violated the Shareholder Agreement by transferring funds to himself without conferring a similar benefit upon Skill and incurring obligations without securing an affirmative vote of the shareholders (ECF No. 1, PageID.12, ¶¶44-45; PageID.27, ¶84), Palamarchuk argues he should not be subject to such contractual provisions because (i) two of Master Beat's original shareholders sold their interest in the company and (ii) Skill breached his obligations under the agreement. ECF No. 11, PageID.96. In support of this contention, Palamarchuk cites prefatory language in Section 2(a) of the agreement, which states the agreement's voting provisions are subject to the shareholders being in "full compliance with their respective obligations hereunder" and provided that "none of the [s]hareholders has sold any portion of their respective shares in the Corporation." ECF No. 11, PageID.96 (*citing* §2(a) of Shareholder Agreement). This argument, however, is contrary to the law, as a mere breach of contract does not entitle the injured party to entirely avoid the contract at common law. *Howard v. LM Gen. Ins. Co.*, 5 N.W.3d 46, 50 (Mich. Ct. App. 2023)

It also strains reason to argue that, simply because one shareholder sold his shares, or because another shareholder fell out of full compliance with the agreement, essential provisions of the Shareholder Agreement are forever nullified, thereby allowing shareholders to thereafter act with impunity. To hold otherwise would seemingly permit one shareholder to take on substantial corporate debt

without first engaging in any discussion amongst the remaining shareholders, to confer a benefit upon himself without conferring any benefit upon the others, or to issue himself additional shares of the company without offering a similar interest to his co-owners. Such an interpretation of the Agreement should be rejected, and Palamarchuk's motion should be denied.

### C.   Skill's Fiduciary Duty Claim (Count IV) is Properly Alleged.

Following entry of judgment in the Prior Action, Palamarchuk became Master Beat's sole director, and in this capacity unquestionably owes Skill a fiduciary duty. *Pittiglio v. Mich Nat. Corp.*, 906 F. Supp. 1145, 1154 (E.D. Mich. 1995) (holding that corporate officers and directors owe a duty of care and loyalty not only to the corporation, but also to its shareholders). In his capacity as a director of the company, Palamarchuk is required to act with due care, loyalty, and in good faith, which includes exercising candor toward Skill and disclosing all material facts within his knowledge that may influence shareholder action. *Murphy v. Inman*, 983 N.W. 2d 354, 362 (Mich. 2022). Palamarchuk's conduct, as alleged, therefore constitutes both a breach of contract and fiduciary duty. *See Techner v Greenberg*, 553 F. App'x 495, 501-02 (6th Cir. 2014). In this regard, Skill presents several facts upon which Palamarchuk is alleged to have breached his fiduciary duties is alleged, as set forth in the Background Section, above. *See* ECF No. 1, PageID.6-7, ¶¶ 21, 26; PageID.17-18, ¶¶57-59; PageID.20-21, ¶¶68-69; PageID.25, ¶79.

Palamarchuk does not articulate how these allegations fall short of constituting a breach of fiduciary duty. Rather, he argues only that Skill should have pled this claim as a derivative action on behalf of Master Beat. ECF No. 11, PageID.100-01. On the contrary, "directors owe fiduciary duties first and foremost to the shareholders of the corporation." *Murphy*, 983 N.W.2d at 362. Thus, a direct action may be brought by a shareholder to redress harm done to him or to enforce a personal right belonging to the shareholder independently from the corporation. *Id.* at 369. *See also Christner v. Anderson, Nietzke & Co., PC,* 444 N.W.2d 779, 783 (Mich. 1989) (holding that an individual action was warranted where the plaintiff-shareholder's injuries were 'distinct' because he was the only shareholder excluded from distributions); *Mich. Nat'l Bank v. Mudgett*, 444 N.W.2d 534, 536 (Mich. Ct. App. 1989). Palamarchuk's motion to dismiss Count IV should be denied.

### D.   Skill's Right of Publicity Claim (Count VI) is Properly Alleged

Count VI of the Complaint alleges that Palamarchuk improperly used Skill's image to advertise live performances that Skill did not participate in, violating Skill's right of publicity. ECF No. 1, PageID.29, ¶89. Michigan courts recognize a cause of action for misappropriation of an individual's likeness where a defendant used a person's image for commercial advertising or gain without the subject's permission. *See Parks v. LaFace Records*, 329 F.3d 437, 459 (6th Cir. 2003); *Pallas v. Crowley, Milner & Co.*, 33 N.W.2d 911, 914 (Mich. 1948); *Bowens v. Aftermath Entm't*, 254

F. Supp. 2d 629, 642-43 (E.D. Mich. 2003); *Hauf v. Life Extension Found.*, 547 F. Supp. 2d 771, 778 (W.D. Mich. 2008).

This is particularly true where one's "identity is used, without consent, to promote an ***unrelated*** product," *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 413 (2001) (emphasis in original), which is precisely what occurred here—in promoting certain live performances, Palamarchuk gave photographs to promoters that included Skill's image even though Skill was completely absent from these performances. ECF No. 1, PageID.16-17, ¶¶56-57; PageID.29, ¶89.

In an effort to avoid liability, Palamarchuk argues (in a single parenthetical) that Skill's claim should be dismissed because the use of his image was as a "work of artistic expression." ECF No. 11, PageID.101-02. While artistic expression defenses are common to publicity right claims, this only applies when one's likeness is *actually used* as a form of creative expression. *ETW Corp. v. Jireh Publishing, Inc.*, 332 F.3d 915, 930-31 (6th Cir. 2003) (citing Restatement (Third) of Unfair Competition, § 46) ("According to the Restatement, such uses are not protected, however, if the name or likeness is used solely to attract attention to a work that is not related to the identified person"). Had Palamarchuk used Skill's likeness in the *show itself*, this may have constituted artistic expression and may have protected his use of Skill's image in an *advertisement* for that performance. But no such facts are alleged here, and Palamarchuk's creative expression defense is without merit.

21

The only other argument Palamarchuk raises is that Skill's claim "must be raised against the *publisher* of the website that published the image Skill references." ECF No. 11, PageID.101. This is wrong, as the Complaint alleges Palamarchuk used Skill's likeness to promote his performances without Skill's permission. ECF No. 1, PageID.16-17, ¶¶55-57; PageID.29, ¶¶89-95. It is irrelevant whether the advertisement was published directly by Palamarchuk or through the event promoter, as courts consistently hold *both* the author and publisher may be liable for an offending publication, not that liability is imposed on the publisher *instead of* the author. *See, e.g., Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407 (9th Cir. 1996) (liability for a car manufacturer that produced an offending commercial as well as ad agency that ran commercial); *Ali v. Playgirl, Inc.*, 447 F. Supp. 723 (S.D.N.Y. 1978) (liability for artist who drew the unauthorized likeness as well as the magazine that published it). Palamarchuk's motion to dismiss Count VI should be denied.

### E.   Skill's False Designation Claim (Count VII) Is Properly Alleged.

"False endorsement occurs when a celebrity's identity is connected with a product or service in such a way that consumers are likely to be misled about the celebrity's sponsorship or approval of the product or service." *ETW*, 332 F.3d at 926. *See also Ruffin-Steinback v. dePasse*, 82 F. Supp. 2d 723, 729 (E.D. Mich. 2000) (liability runs where a defendant seeks "to endorse or promote a product by associating the plaintiff with the product without the plaintiff's permission"); *Waits*

*v. Frito–Lay, Inc.*, 978 F.2d 1093, 1110 (9th Cir. 1992) (holding that artist whose identity is used to falsely endorse product has standing to sue under section 43(a) of the Lanham Act).

"The underlying question to be answered is whether the plaintiff has shown 'that the public believe[s] that the mark's owner sponsored or otherwise approved of the use of the trademark.'" *Arnold v. Treadwell*, 642 F. Supp. 2d 723, 731 (E.D. Mich. 2009). In the present case, Skill alleges Palamarchuk used his image in marketing materials even though Skill did not perform in the shows being marketed. ECF No. 1, PageID.17, ¶57. Skill further alleges that Palamarchuk used Skill's identity in a manner that deceived prospective audience members into believing Skill would be performing alongside Palamarchuk as "The Romantics," or that Skill sponsored or approved Palamarchuk's performances. ECF No.1, PageID.30, ¶98; **Ex. 1**, at ¶¶14-18. This conduct violates § 43(a) of the Lanham Act and Palamarchuk's motion should be denied.

## F.   Defendants Present No Substantive Arguments as to Several Claims.

Besides their generalized assertion of res judicata, Defendants present no substantive arguments against several claims, including: Count II (for an accounting); Count III (for relief pursuant to BCA § 489); Count VIII (for unjust enrichment), Count IX (for conversion) and Count X (for judicial dissolution). Defendants have therefore forfeited any argument that Counts II, III, VIII, IX, and

X should be dismissed before Defendants file their answer. *See* Fed. R. Civ. P. 12(b)

("A motion asserting any [Rule 12(b)] defenses must be made *before* pleading if a

responsive pleading is allowed.").

## III.  **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED.**

Defendants make limited reference in their motion to a request for relief in the

form of summary judgment, but they do not indicate which claims are subject to

their summary judgment motion. Regardless, Skill respectfully contends that

summary judgment is premature and requests this Court afford him the opportunity

to conduct discovery regarding any assertions in Palamarchuk's declaration before

Skill is compelled to address issues raised in Defendants' motion through the lens of

summary judgment. *See Plott v Gen Motors Corp, Packard Elec Div*, 71 F.3d 1190,

1195 (6th Cir 1995) ("Before ruling on summary judgment motions, a district judge

*must* afford the parties adequate time for discovery, in light of the circumstances of

the case"); *Oakmont Livonia, LLC v Rhodium Cap Advisors LLC*, No 22-11128,

2022 WL 19001843, *2 (E.D Mich. Sept. 26, 2022) (denying summary judgment

where non-movant attached affidavit under Federal Rule of Civil Procedure 56(d),

explaining need for additional discovery). *See also* Jeffrey S. Becker Declaration,

attached as **Ex. 5**.

In addition, this Court may take note of Skill's supporting Declaration, which

explains the need for discovery, and which also rebuts the factual assertions in

Palamarchuk's Declaration and therefore creates a question of fact that warrants denial of Defendants' motion for summary judgment in all respects. *See Oakmont*, 2022 WL 19001843, *2 (competing affidavits illustrated disputed issues of fact).

## CONCLUSION

For the foregoing reasons, Michael Skill respectfully requests that this Court deny Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment.

Dated: June 4, 2024                    Respectfully submitted,

| | |
|---|---|
| Jeffrey S. Becker | */s/ Derek J. Linkous* |
| (ARDC: 6282492) | Derek J. Linkous (P82268) |
| Amanda J. Alasauskas | Zakary A. Drabczyk (P84777) |
| (ARDC: 6326529) | **BUSH SEYFERTH PLLC** |
| **SWANSON, MARTIN & BELL, LLP** | 100 W. Big Beaver Road, Suite 400 |
| 330 N. Wabash Ave., Suite 3300 | Troy, MI  48084 |
| Chicago, IL 60611 | (248) 822-7800 |
| (312) 321-9100 | linkous@bsplaw.com |
| jbecker@smbtrials.com | drabczyk@bsplaw.com |
| aalasauskas@smbtrials.com | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 4, 2024, I filed the foregoing document using the Court's electronic filing system, which will notify all counsel of record.

*/s/ Alexis Stroud*

25

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL SKILL,

      Plaintiff(s),

v.

WALTER PALAMARCHUK, and
MASTER BEAT, INC.,

      Defendant(s).

Case No. 2:23-cv-13206-LJM-KGA
Honorable Laurie J. Michelson

---

**BRIEF FORMAT CERTIFICATION FORM**

I, Derek J. Linkous, hereby certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1 and Judge Michelson's Case Management Requirements. In particular, I certify that each of the following is true (click or check box to indicate compliance):

☒ the brief contains a statement regarding concurrence, *see* LR 7.1(a);

☒ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

☒ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

☒ the brief and all exhibits are searchable .pdfs, *see* Case Management Requirements § III.A;

☒ the brief is double spaced (except for footnotes and necessary block quotes) with one-inch margins, *see* LR 5.1(a)(2);

☒ deposition transcripts have been produced in their entirety and not in minuscript, *see* Case Management Requirements § III.A;

☒ if the brief and exhibits total 50 pages or more, a courtesy copy with ECF headers will be sent to chambers, *see* Case Management Requirements § III.B.

I also acknowledge that if the Court later finds that these requirements are not met, my brief will be stricken.

                                 */s/ Derek J. Linkous*
                                 Dated: June 4, 2024