UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL SKILL,

     Plaintiff,

v.

WALTER PALAMARCHUK and
MASTER BEAT, INC.,

     Defendants.

Case No. 23-13206
Honorable Laurie J. Michelson

---

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO
DISMISS [11]**

---

In the late 1970s, Michael Skill, Walter Palamarchuk, Jimmy Marinos, and
Coz Canler formed the Detroit rock band "The Romantics." The band was quite
successful, traveling around the world performing hit songs including "*What I Like
About You*" and "*Talking In Your Sleep*." With the band's success came money. And
with money, problems.

A rocky relationship between lead singer Palamarchuk and lead guitarist Skill
crescendoed in 2021 when Palamarchuk filed a lawsuit against Skill in Michigan
state court. He alleged that Skill had diverted the band's royalty payments to himself,
rather than waiting for the money to pass through Master Beat—the company the
band had set up to handle its finances. Inexplicably at the summary disposition
phase, Skill's counsel filed with the court a copy of Palamarchuk's brief featuring
Skill's counsel's signature, rather than a brief opposing the motion. With two
identical briefs arguing for the same resolution, the state court granted summary

disposition against Skill, finding him liable for breach of fiduciary duty, unjust enrichment, embezzlement, and conversion.

Dissatisfied, Skill decided to try his hand with new counsel in a new court. In December 2023, he filed this lawsuit in federal court arguing that while he did engage in unlawful self-help in the past, it is now Palamarchuk who is diverting Master Beat's funds to himself. Skill claims that Palamarchuk breached his fiduciary duty, as well as Master Beat's shareholder agreement. He also claims that Palamarchuk is using Skill's likeness to promote performances without Skill's permission and performing as "The Romantics" without giving due compensation to Skill.

Now before the Court is Palamarchuk and Master Beat's motion to dismiss. Defendants argue that Skill's complaint is barred by res judicata because he should have raised these claims during the state court action and that, in the alternative, at least some of Skill's claims are deficient under Federal Rule of Civil Procedure 12(b)(6). Skill responds that his claims are not precluded because the facts underlying his claims occurred after the state court's judgment or could not have been reasonably discovered at that time. Because the Defendants have failed to demonstrate that Skill's claims are precluded, the motion to dismiss is DENIED.

## I.

Defendants style their motion as a "motion to dismiss or, in the alternative, for summary judgment." (ECF No. 11.)

Here, while the parties attach and rely on considerable extraneous evidence, "it would be inappropriate to consider [their] fact-intensive arguments at this early

stage, prior to discovery." *Lewis Lumber & Milling, Inc. v. Mereen-Johnson, LLC*, No. 17-643, 2018 WL 6181356, at *3 (M.D. Tenn. Nov. 27, 2018) (declining to convert a motion to dismiss to a motion for summary judgment when discovery had not yet been completed); *see Spicer v. Michigan*, No. 19-13718, 2021 U.S. Dist. LEXIS 126072, at *8 (E.D. Mich. July 8, 2021) ("The Court will also decline to convert the motion to dismiss into a summary judgment motion because the parties have not exchanged discovery."); *Tucker v. Union of Needletrades, Indus., & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) ("[A] motion for summary judgment may not be granted until a plaintiff has had an opportunity for discovery."). As evidenced by the parties' conflicting presentation of the facts, they disagree about such things as whether and when Palamarchuk made improper payments from Master Beat to himself, whether Palamarchuk used or authorized the use of pictures of Skill to promote performances by "The Romantics," and whether Palamarchuk has been depositing revenue from "The Romantics" shows into Master Beat's bank account.

Accordingly, the Court declines to convert Defendants' motion to dismiss into a motion for summary judgment. *See Swanigan v. Nw. Airlines, Inc.*, 718 F. Supp. 2d 917, 922 (W.D. Tenn. 2010) ("It is within the trial court's discretion to determine whether to convert a motion to dismiss into a motion for summary judgment." (citing *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004))); *see also* Fed. R. Civ. P. 12(d).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "This standard does not require detailed factual allegations." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012) (internal quotation omitted). But the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In assessing whether a plaintiff has met his burden, the Court accepts as true the plaintiff's well-pled factual allegations and draws all reasonable inferences in the light most favorable to the plaintiff. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

Generally, whether a plaintiff has sufficiently pled his claims is answered based on the facts within the four corners of the complaint alone. *See Caraway v. Corecivic of Tenn., LLC*, 98 F.4th 679, 687–88 (6th Cir. 2024); Fed. R. Civ. P. 12(d). However, exhibits attached to a motion to dismiss and information in the public record or the record of the case can be considered, without converting the motion into one for summary judgment, if referenced in the complaint and central to the plaintiff's claims. *See Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

Consistent with that principle, Defendants have attached to their motion the state court's order granting summary disposition as well as its order denying Skill's motion for reconsideration, Skill's rejected amended response brief in opposition, and the decision of the Michigan Court of Appeals. Because these are public records referenced in the complaint (*see* ECF No. 1, PageID.11) and they are central to Skill's

claims, the Court will consider them without converting the motion to dismiss into a motion for summary-judgment. The Court now turns to the facts as detailed in Skill's complaint, which it must accept as true.

## II.

In 1984, the members of the "The Romantics" formed Master Beat, Inc. (ECF No. 1, PageID.4.) Its purpose was to facilitate the efficient collection of the band's royalty payments as well as "collect revenues generated from the sale of the band's merchandise and in connection with the band's live performances." (*Id.* at PageID.6.) It would then distribute the band's profits "to the band members equally." (*Id.*)

At formation, each member of the band owned 25% of Master Beat. (*Id.*) In or around 2011, however, Marinos and Canler left the company, leaving Skill and Palamarchuk as co-owners and co-directors. (*Id.* at PageID.8.) Over the years, Palamarchuk and Skill's relationship disintegrated. Palamarchuk began to make "unilateral decisions" regarding "the timing and extent to which Master Beat would make distribution payments to its members"—that is, himself and Skill. (*Id.* at PageID.10.) He "ignored or refused numerous requests by Skill to hold a shareholder meeting" as well as "Skill's requests to inspect and/or audit Master Beat's books and financial records." (*Id.*)

Between 2020 and 2021, "Skill reached out to Palamarchuk in an attempt to secure information regarding the company's finances, as well as to understand why Palamarchuk was not distributing certain royalty payments to Skill." (*Id.*) But Palamarchuk refused to communicate with Skill. So Skill decided to take matters into

5

his own hands. He attempted to secure royalty payments by contacting some of the band's partners directly, "including Sony, SoundExchange and K-Tel," rather than waiting for the money to pass through Master Beat. (*Id.* at PageID.11.)

In response, Master Beat and Palamarchuk sued Skill in Oakland County Circuit Court on August 19, 2021. (*Id.*) There, Palamarchuk told a different story about the pair's relationship.

Palamarchuk alleged that for several years it was Skill who "refused to participate as a director in Master Beat" and "refused to communicate with" Palamarchuk. (ECF No. 11-7, PageID.416.) Palamarchuk alleged that this behavior culminated in 2021 with Skill making a direct claim to Sound Exchange "to directly receive certain royalties." (*Id.*) This, Palamarchuk alleged, "caused Master Beat to be unable to pay [Palamarchuk] [his] portion of those royalties" and caused "unnecessary harm to third parties, thus potentially exposing Master Beat to claims." (*Id.*) Accordingly, Palamarchuk sued Skill for breaching his fiduciary duty, unjustly enriching himself, embezzling money, and concealing converted property. (*Id.* at PageID.419–421.)

On February 18, 2022, Palamarchuk and Master Beat moved for summary disposition, asking the state trial court to award damages and remove Skill as a director of Master Beat pursuant to Michigan Compiled Laws § 450.1514. (*See* ECF No. 11-4; ECF No. 11-9, PageID.437.) Skill's response was due on April 1, 2022. (ECF No. 11-9, PageID.439.) But rather than simply filing a timely response, Skill moved to file a brief in opposition under seal. (*Id.*) The trial court issued an order to show

6

cause why Palamarchuk and Master Beat's motion for summary disposition should not be granted. (*Id*. at PageID.439–440.) After a hearing, the court set aside the show cause order and issued an amended briefing schedule for Skill to file his response. (*Id*. at PageID.440.)

Under this order, Skill's response was due on June 29, 2022. (*Id*. at PageID.438.) That day, a document purporting to be Skill's response was filed. (*Id*.) "In an odd twist," however, the enclosed brief was titled "Brief in Support for Plaintiffs' Motion for Summary Disposition." (*Id*.) The document "appear[ed] to be a retyped copy" of Palamarchuk and Master Beat's brief adorned with Skill's counsel's signature. (*Id*. at PageID.439.) So "Skill's only timely response" to the motion for summary disposition sought "relief against himself." (*Id*.)

Realizing this error, Skill filed an amended response brief ("an untimely, successive response," according to the trial court), where he made an argument against summary disposition. (*Id*.; *see* ECF No. 11-8.) Specifically, Skill argued that he only "took certain measures to obtain the royalty payments he [was] entitled to" because Palamarchuk "mismanaged [Master Beat's] business operations" to his detriment "including the unreasonable and improper withholding of royalty payments." (ECF No. 11-8, PageID.426.) Skill argued that Palamarchuk "made virtually no efforts" to follow Master Beat's bylaws and did not hold a corporate meeting for ten years (despite the bylaws directing a meeting to be held annually). (*Id*. at PageID.428.) "[T]here was no meeting or vote to make Palamarchuk the treasurer of Master Beat," argued Skill; rather, Palamarchuk "did that all on his

own." (*Id*.) And, with sole control over Master Beat's finances, "Palamarchuk stopped returning Skill's phone calls" and "Skill stopped receiving royalty payments." (*Id*. at PageID.429.) So, Skill alleged, "[i]f anyone ha[d] breached [their] fiduciary duties, it [was] Palamarchuk for failing to distribute royalties." (*Id*. at PageID.433.)

But that filing came late and without the trial court's leave. Thus, after giving Skill "a total of 17 weeks to prepare and file a timely response," the trial court rejected Skill's new, untimely brief. (ECF No. 11-9, PageID.440.) Notably, the trial court wrote that "[e]ven if [it] were to disregard" Skill's first, mistakenly filed response, the result would be the same. (*Id*. at PageID.442.) Indeed, the "uncontroverted legal authorities and analysis" offered by Palamarchuk and Master Beat "dispositively establish[ed] that Skill's withdrawal of funds from the Master Beat account, diversion of funds from Sound Exchange and Sony, and theft of K-Tel funds constitute[d] conversion, breach of his fiduciary duties as director of Master Beat[,] and unjust enrichment." (*Id*. at PageID.442.) The trial court made clear that its merits determination was "a separate and distinct basis for granting the Motion." (*Id*.)

Skill then filed a motion for reconsideration. (ECF No. 11-10.) He "begg[ed]" the trial court to give him "another opportunity to file his brief Opposing the Motion for Summary Judgment." (*Id*. at PageID.455.) Skill also argued that the trial court made an error by specifying that the "uncontroverted legal authorities and analysis" in Palamarchuk and Master Beat's motion were a separate basis for summary disposition because "[Palamarchuk] refused to hold shareholder meetings, [and] refused to provide accountings of the royalties and the expenses incurred by Master

Beat, Inc." (*Id*.) The trial court denied the motion for reconsideration, explaining that, because Skill had already filed an appeal, the trial court lacked jurisdiction to consider his motion. (ECF No. 11-17.) And on February 29, 2024, the Michigan Court of Appeals affirmed the trial court's ruling such that Palamarchuk prevailed on his claims against Skill. (ECF No. 11-6.)

That is the state court litigation history that leads Palamarchuk and Master Beat to now seek dismissal of the claims brought by Skill in this federal court action.

### III.

As a threshold matter, this Court must determine which of Skill's claims Defendants seek to dismiss and why. To start, Defendants say that "[t]he vast bulk of Plaintiff's Complaint is barred by res judicata. Each claim was something that Skill could have raised (and did in fact argue) in the State Court Action." (ECF No. 11, PageID.83.) But they also say that "[a]s for the few new claims allegedly arising since the entry of judgment in the State Court Action, each claim is subject to dismissal." (*Id*.) The Court understands this to be a recognition that "new" claims would not be "barred by res judicata." Unfortunately, this oscillation between asserting that *all* claims versus only *some* claims are barred by res judicata permeates Defendants' briefing. (*Compare id*. at PageID.90 ("[M]ost of the complaint should be dismissed under the doctrine of res judicata."), *with id*. at PageID.95 ("[E]ach count raised" in the present [c]omplaint should be dismissed under the doctrine of res judicata.").

A close read of Defendants' motion to dismiss reveals that Defendants chose to attack the truth of specific *facts* in Skill's complaint, rather than explain why his

specific *claims* should fail—which adds to the difficulty of discerning the bases for dismissal. (*See* ECF No. 14, PageID.691 ("Defendant's motion is comprised of muddled attacks on certain facts alleged in the Complaint without clarity as to which causes of action are sought to be dismissed based on these challenges.").) In their reply brief Defendants indicate that there could be "five 'new' claims beyond those which were or could have been raised in the State Court Action" which they believe should also be dismissed for failure to state a claim. (ECF No. 15, PageID.754; *see* ECF No. 11, PageID.95 ("Plaintiff alleges a limited set of activities arising after or different from those in the State Court Action.").) Those "new" claims, according to Defendants, are Count 2 (demand for inspection), Count 4 (breach of fiduciary duty), Count 5 (breach of contract), Count 6 (right of publicity), and Count 7 (false designation under the Lanham Act § 1125(a)). (ECF No. 15, PageID.754.)

Thus, as far as the Court can discern, Defendants argue that (1) Skill's complaint should be dismissed because all claims are barred by res judicata and (2) if new, Counts 2, 4, 5, 6, and 7 should be dismissed for failure to state a claim. The Court will address these arguments in turn.

### A. Res Judicata

Start with Defendants' assertion that "each count raised" in Skill's complaint is barred by res judicata. (ECF No. 11, PageID.95.) "Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007) (citing 28 U.S.C. § 1738). Under Michigan law, a "second, subsequent action" is barred by res

10

judicata when: "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004); *see AuSable River Trading Post, LLC v. Dovetail Sols., Inc.*, 874 F.3d 271, 274 (6th Cir. 2017). Michigan courts take a "broad approach to the doctrine of res judicata," which bars "not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair*, 680 N.W.2d at 395. The burden of proving a res judicata defense is on the party asserting it. *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 572 (6th Cir. 2008).

Here, the parties do not dispute that the prior action—that is, Palamarchuk and Master Beat's lawsuit against Skill in state court—resulted in a final judgment on the merits. *Cf. Dubuc v. Green Oak Twp.*, 312 F.3d 736, 747 (6th Cir. 2002) ("A dismissal with prejudice for failure to comply with a court order amounts to an adjudication on the merits.") Likewise, there is no argument that the second element—that both actions involved the same parties—is satisfied here. That leaves the third element: whether the claims raised in this lawsuit could have been resolved in the prior state court action.

The Sixth Circuit has explained that Michigan follows a broad "transactional test" to decide whether two claims are related such that res judicata applies. *Etherton v. Serv. First Logistics, Inc.*, 805 F. App'x 469, 471 (6th Cir. 2020) That test asks "whether a single group of operative facts give rise to the assertion of relief in both

11

cases." *Id.* "Whether a factual grouping constitutes a 'transaction' for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in time, space, origin or motivation, and whether they form a convenient trial unit." *Adair*, 680 N.W.2d at 398 (quoting 46 Am. Jur. 2d *Judgments* § 533) (cleaned-up).

Defendants argue that Skill's allegations before this Court "arise out of the same operative facts at issue in the State Court Action," that is, "the management and direction of Master Beat between Skill and Palamarchuk." (ECF No. 11, PageID.95.) As they see it, Skill has already raised, attempted to raise, or could have raised claims of breach of fiduciary duty, unjust enrichment, and conversion through his motion for reconsideration and untimely brief in opposition to summary judgment in the state trial court. (*Id.*) So, they say, his claims should be barred here.

Skill responds that his claims are not barred by res judicata because "new facts have developed, and separate transactions have been engaged in since the entry of judgment in [the] Prior Action." (ECF No. 14, PageID.695.) He explains that "the facts underlying the Prior Action occurred around the time that lawsuit was commenced, whereas [his] alleged injuries here—which are ongoing as of the filing of this brief—arise out of distinct events that did not begin until more than a year after the transactions at issue in the Prior Action." (*Id.* at PageID.698.) Skill also argues that Defendants' characterization of the relevant "transaction" is "far too broad." (*Id.* at PageID.696.) Instead, Skill says, his claims in the present action arise from

"Palamarchuk's own misconduct following entry of judgment in the Prior Action." (*Id.*)

Skill is right. When a claim is based at least in part on "new material facts" that postdate a prior judgment, that prior judgment generally does not preclude the new claim. *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582, 599 (2016). Or as the Michigan Court of Appeals has explained, "[m]aterial operative facts occurring after the decision of an action with respect to the same subject matter may in themselves, or taken in conjunction with the antecedent facts, comprise a transaction which may be made the basis of a second action not precluded by the first." *Jones v. Westminster, LLC*, No. 334447, 2018 WL 2370634, at *5 (Mich. Ct. App. May 24, 2018) (quoting Restatement (Second) of Judgments § 24 cmt. f (1980)). It cannot be, as Defendants argue, that because "Skill has already previously argued . . . that Palamarchuk mismanaged Master Beat" in the past, he is precluded from ever arguing that Palamarchuk has committed further bad acts. (*See* ECF No. 11, PageID.93.)

Thus, to prevail at this stage, Defendants have the burden to show that Skill's claims here do *not* rest on "material operative facts" that postdate the state court judgment. *Jones*, 2018 WL 2370634, at *5. They have failed to meet that burden. Indeed, some of Skill's claims are based *exclusively* on events that postdate the state court judgment. For instance, Counts 6 and 7—the right of publicity and Lanham Act claims—are based on the allegation that Palamarchuk improperly used Skill's

likeness. According to the complaint, that occurred in 2023, more than a year after the state court judgment. (ECF No. 1, PageID.16–17 (October 2023 Performance).)[1]

Meanwhile, the remaining claims rest at least in part on new material facts. For instance, Counts 4 and 5—the breach of fiduciary duty and breach of contract claims—rest in part on the allegations that Palamarchuk released "new music under the name 'The Romantics' without notifying and/or engaging in any discussion with Skill" and withheld "money received from live performances under the 'Romantics' name." (*Id.* at PageID.25.) According to the complaint, all these events postdate the state court judgment. (*Id.* at PageID.12–19.) And Counts 9 and 10—the unjust enrichment and conversion claims—rest on the allegation that Palamarchuk kept and misappropriated various forms of payments to which Skill was at least partially entitled. The complaint appears to allege that at least some of these payments occurred after Skill was "stripped of his officer position with Master Beat as a result of Palamarchuk's lawsuit." (*Id.* at PageID.13, 16–19.)

In short, Palamarchuk has failed to identify a single claim that rests entirely on allegations that could have been raised in state court. True, some allegations in the complaint involve events that purportedly occurred before the state court judgment. But so long as Skill makes claims based in part on new materials facts, he may use "antecedent facts" to support his new claims. *See, e.g.*, *Jones*, 2018 WL

---

[1] While Skill's complaint only details and provides evidence of one example, his complaint is careful to note that "[u]pon information and belief" Palamarchuk has performed "numerous" times under "The Romantics" name and never gained Skill's permission to "use his image and likeness in promoting . . . other performances." (ECF No. 1, PageID.17.)

2370634, at *5; *Stanislaw v. Thetford Township*, No. 20-1660, 2021 WL 3027195, at

*5 (6th Cir. July 19, 2021) (explaining that facts predating the prior judgment "may

inform" a claim based largely on new material facts); *Stafa v. City of Troy*, 24-10419,

2025 U.S. Dist. LEXIS 33713, at *6–7 (E.D. Mich Feb. 25, 2025) (rejecting a res

judicata defense when defendant merely argued that "no facts raised in prior related

litigation" could be raised in the current litigation). So the complaint is not doomed

by its mere mention of prior events.[2]

Of course, discovery may reveal that res judicata bars some of Skill's claims.

Indeed, if it becomes apparent that during the pendency of the prior state court action

Skill was aware of facts and evidence that are the sole basis for his present claims,

Defendants would be right to re-raise their res judicata defense. *See Dart v. Dart*, 597

N.W.2d 82, 88 (Mich. 1999) ("[Michigan courts] have barred, not only claims already

litigated, but every claim arising from the same transaction that the parties,

exercising reasonable diligence, could have raised but did not."). But at this stage—

taking the complaint as true and considering Palamarchuk's arguments in their

underdeveloped state—the Court finds that dismissal on res judicata grounds is

inappropriate.

---

[2] The Court will, however, narrow the scope of Count 1, Skill's demand for
accounting. (ECF No. 1, PageID.19–20.) Skill seeks "an accounting from
Palamarchuk and Master Beat for revenues Master Beat has received and distributed
from June 30, 2020[,] through the present." (*Id*. at PageID.20.) But this request asks
Defendants to provide information from two years before the state court judgment.
And while Skill may use "antecedent facts" to support his new claims, that is not what
Count 1 seeks to do. Accordingly, the Court will narrow Count 1 to only include
information from July 18, 2022, onwards.

## B. Failure to State a Claim

Apart from res judicata, Defendants also argue that Counts 2, 4, 5, 6, and 7 fail to state a claim under Federal Rule of Civil Procedure 12(b)(6). (*See* ECF No. 11, PageID.95–102; ECF No. 15, PageID.754 n.4.) The Court addresses these claims in turn.

### 1. Demand for Shareholder Inspection (Count 2)

First, Skill argues that Master Beat violated his shareholder rights by denying him access to its books and records, and he demands an inspection pursuant to Michigan Compiled Laws § 450.1487. (ECF No. 1, PageID.21.)

Upon making a written request for an inspection, Michigan Compiled Laws § 450.1487(2) provides that:

> Any shareholder of record . . . shall have the right during the usual hours of business to inspect for any proper purpose the corporation's stock ledger, a list of its shareholders, and its other books and records, if the shareholder gives the corporation written demand describing with reasonable particularity his or her purpose and the records he or she desires to inspect, and the records sought are directly connected with the purpose. A proper purpose shall mean a purpose reasonably related to such person's interest as a shareholder.

Michigan courts have further explained that a proper purpose "is one that is in good faith, seeks information bearing upon protection of the shareholder's interest and that of other shareholders in the corporation, and is not contrary to the corporation's interests." *N. Oakland Cnty. Bd. of Realtors v. Realcomp, Inc.*, 572 N.W.2d 240, 244 (Mich. Ct. App. 1997). "The distilled version is: a shareholder who has a genuine, good faith interest in the corporation's welfare or her own as a shareholder is entitled to inspect those corporate books that bear on her concerns."

16

*Hammoud v. Advent Home Med., Inc.*, No. 340502, 2018 Mich. App. LEXIS 389, at *14 (Mich. Ct. App. Feb. 27, 2018).

Michigan Compiled Laws § 450.1487(3) further details the procedure through which a shareholder can demand an inspection. Specifically, it warns that "[i]f the corporation does not permit an inspection within 5 business days after a demand has been received . . . or imposes unreasonable conditions upon the inspection," the shareholder may compel action through the courts. A company challenging a shareholder's demand for inspection bears the burden to prove that the request is improper. *Id.*

Here, Skill alleges he sent a letter to Master Beat in December of 2023—over a year after the state trial court found in Palamarchuk's favor—in which he requested the opportunity to inspect the company's records. (ECF No. 1, PageID.21.) Skill sought, among other things, documentation reflecting all payments received by Master Beat, expenses paid to third parties by Master Beat, and all payments or distributions made by Master Beat to its shareholders from January 1, 2018, through the date of the inspection. (*Id.*) In his complaint, Skill says he "seeks to inspect for the purpose of obtaining transparency as to Master Beat's financial endeavors during an extended period of time for which has not received any information concerning the amounts of money Master Beat has received, has expended, or has distributed to shareholders." (*Id.* at PageID.22.) For its part, Master Beat argues that Skill's claim is "deficient" because he "states no legitimate shareholder concern" or proper purpose and his requests are "overbroad." (ECF No. 11, PageID.98–99.)

This is not a fair reading of the complaint for purposes of determining if it states a plausible claim. Given the nature of the relationship between Skill and Palamarchuk, as well as the onset of recent litigation, Skill's purported reasons for seeking inspection are "reasonably related" to his interest as one of Master Beat's two shareholders. *N. Oakland Cnty. Bd. of Realtors,* 572 N.W.2d at 241. This conclusion is bolstered by the history of the parties' communications. As Skill explains in his response brief, Master Beat did send Skill a copy of its 2022 balance sheet. Unfortunately, that document only "show[ed] the company's aggregate financial figures with no detail" about any of Master Beat's individual transactions. (ECF No. 14, PageID.703.) And while this limited information was provided for 2022, Master Beat "will not explain why it refuse[s] to tender similar records" for 2023 to the present. (*Id.*) Thus, despite being a 50% shareholder of the company, Skill has been left without any way to discern "whether Palamarchuk is properly and fairly managing the company's affairs or if he has acted in a manner intended" to benefit himself over Skill. (*Id.* at PageID.705); *see Bafna v. Echo Valley Condo. Ass'n*, No. 353785, 2021 Mich. App. LEXIS 6130, at *14 (Mich. Ct. App. Oct. 28, 2021) ("If a plaintiff seeking records clarifies the purpose of its request in the context of litigation . . . we see no reason the trial court should not consider those subsequent clarifications or reasons . . . ."). Nor is Skill's request overbroad; he delineates specific information within a specific timeframe that he is seeking to review. Accordingly, the Court finds that Skill adequately states a claim.

18

## 2. Breach of Fiduciary Duty (Count 4)

Next, Skill alleges Palamarchuk breached his fiduciary duty. (ECF No. 1, PageID.25.)

To establish a claim for breach of fiduciary duty, a plaintiff must prove (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damages caused by the breach of duty. *Highfield Beach at Lake Michigan v. Sanderson*, 954 N.W.2d 231, 247 (Mich. Ct. App. 2020); *see also Fisher v. Perron*, 30 F.4th 289, 299 (6th Cir. 2022) (same elements).

On the first element, Skill says that Palamarchuk owed him a fiduciary duty "pursuant to the shareholder agreement." (ECF No. 1, PageID.24.) In Michigan, directors and officers of corporations owe fiduciary duties and a strict duty of good faith to the corporation they serve, as well as directly to the corporation's shareholders. *Murphy v. Inman*, 983 N.W.2d 354, 361 (Mich. 2022). As Palamarchuk is the sole director of Master Beat, and Skill is a shareholder, this element is satisfied.

As for the second element, Skill alleges that Palamarchuk breached his duty in several ways, including by "withholding royalty payments" from Skill, "withholding money received from live performances under the 'Romantics' name from Master Beat and/or Skill," and "[r]eleasing new music under the name 'The Romantics' without notifying and/or engaging in any discussion with Skill." (ECF No. 1, PageID.25–26.) Taking these allegations as true, the second element is satisfied.

Likewise, Skill alleged that "[a]s a direct and proximate result [of] Palamarchuk's breach of fiduciary duties, Skill has suffered significant damages"

such as lost royalties and unpaid performance fees. (*Id.* at PageID.26.) So the third element is satisfied.

Palamarchuk does not articulate how these allegations fall short of constituting a breach of fiduciary duty. Rather, he argues only that Skill should have pled this claim as a derivative action on behalf of Master Beat. (ECF No. 11, PageID.100–101.) But "directors owe fiduciary duties first and foremost to the shareholders of the corporation." *Murphy*, 983 N.W.2d at 362. Thus, a direct action may be brought by a shareholder to redress harm done to him or to enforce a personal right belonging to the shareholder independently from the corporation. *Id.* at 369; *see also Christner v. Anderson, Nietzke & Co., PC*, 444 N.W.2d 779, 783 (Mich. 1989) (holding that an individual action was warranted where the plaintiff shareholder's injuries were "distinct" because he was the only shareholder excluded from distributions); *Mich. Nat'l Bank v. Mudgett*, 444 N.W.2d 534, 536 (Mich. Ct. App. 1989).

Accordingly, the Court finds that Skill properly states a claim for breach of fiduciary duty.

### 3. Breach of Contract (Count 5)

Next, Skill alleges a breach of contract claim against Palamarchuk. (ECF No. 1, PageID.26–28.) A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach. *Miller-Davis Co. v. Ahrens Constr., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014).

Here, Skill and Palamarchuk are both parties to Master Beat's shareholder agreement. (ECF No. 1-1, PageID.48.) Relevant here, Section 2(B) provides that "[a]ny and all corporate actions (other than election of directors) required or permitted to be taken by the shareholders or directors of Master Beat must be taken upon the agreement of three of the four Shareholders or Directors"—i.e., a supermajority. (*Id.* at PageID.38–39.) Section 2(C) of the agreement provides that "no bonus, perquisite or benefit shall be declared or conferred upon any Shareholder unless declared or conferred upon the Shareholders equally." (*Id.* at PageID.39.) And Section 11(d) provides that if there is a deadlock in a vote by shareholders on "substantive" issues, the "agreement will terminate." (*Id.* at PageID.46.)

Skill alleges that Palamarchuk breached his contractual obligations under the shareholder agreement when he, among other things, withheld "royalty payments and/or company distributions from Skill," "[p]erform[ed] with his own band under the 'Romantics' name and fail[ed] to tender the performance revenues to Master Beat," withheld "money received from live performances under the 'Romantics' name from Master Beat and/or Skill," and "[took] corporate actions required to be taken by the shareholders of Master Beat without first securing an affirmative positive vote of a supermajority of the company's shareholders." (ECF No. 1, PageID.27.)

Accordingly, Skill alleges that (1) there was a contract (i.e., the shareholder agreement) (2) that Palamarchuk breached it (and in ways that post-date the state court judgment) and (3) because of the breach Skill incurred damages. (*Id.* at PageID.26–28.) Palamarchuk responds by attacking the factual basis underlying

21

Skill's breach of contract claim. For example, Palamarchuk denies releasing new music under the "Romantics" name and denies failing to deposit revenue from shows into Master Beat's bank accounts. (ECF No. 11, PageID.100.) But taking the factual allegations alleged in Skill's complaint as true, as the Court must in a motion to dismiss under Rule 12(b)(6), Skill successfully states a claim for breach of contract.

### 4. Right of Publicity and the Lanham Act (Counts 6 & 7)

Next, Skill alleges two separate but related claims. First, he argues that Palamarchuk used Skill's "likeness, name, and identity" without permission and that this use "constitutes an invasion of Skill's right of publicity." (ECF No. 1, Page.29.) And second, he brings a false designation claim under the Lanham Act, 15 U.S.C. § 1125(a), alleging that Palamarchuk used Skill's "likeness, name, and identity in advertising Palamarchuk's live performances which do not feature Skill." (*Id.* at PageID.30.)

Start with the right of publicity claim. The right of publicity protects a plaintiff's "pecuniary interest in the commercial exploitation of his identity." *Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 834 (6th Cir. 1983). To state a claim, a plaintiff must prove (1) that he has a pecuniary interest or significant commercial value in his identity and (2) that the defendants engaged in commercial exploitation of his identity. *Arnold v. Treadwell*, No. 283093, 2009 Mich. App. LEXIS 1536, at *13 (Mich. Ct. App. July 16, 2009) (citing *Hauf v. Life Extension Found.*, 547 F. Supp. 2d 771, 777–78 (W.D. Mich. 2008)).

On the first element—whether Skill has a pecuniary interest in his identity—courts have held that "a plaintiff need not be a national celebrity to demonstrate significant commercial value." *Hauf*, 547 F. Supp. 2d at 778. Rather, a commercial value in one's identity can be established by proof of "(1) the distinctiveness of the identity and (2) the degree of recognition of the person among those receiving the publicity." *Id*. Moreover, "[t]he defendant's act of misappropriating the plaintiff's identity . . . may be sufficient evidence of commercial value." *Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619, 624 (6th Cir. 2000). As Skill was the lead guitarist in a popular and successful rock band, this Court has no trouble finding that he has plausibly pled a pecuniary interest in his identity. *See, e.g.*, *Arnold*, 2009 Mich. App. LEXIS 1536, at *14 (finding that plaintiff established a commercial value in her likeness when she had contracted to model clothing in a fashion show, played an extra in a music video, and worked as an exotic dancer); *Hauf*, 547 F. Supp. 2d at 780 (denying motion to dismiss a Lanham Act claim because plaintiff, a young cancer patient with a compelling story, might have "a notoriety among cancer patients or advocates of alternative medicine that is strong enough to have commercial value within the identifiable group").

To show the second element—that Palamarchuk exploited his identity—Skill must demonstrate that Palamarchuk used his "likeness for [his] own benefit" and that the use was unauthorized. *Armstrong v. Eagle Rock Ent., Inc.*, 655 F. Supp. 2d 779, 786 (E.D. Mich. 2009). Skill alleges in his complaint that (1) Palamarchuk used and continues to use Skill's identity on advertisements for Palamarchuk's "own

pecuniary advantage" and (2) "Skill did not authorize or consent to Palamarchuk's use." (ECF No.1, PageID.29.) So Skill adequately alleges a right of publicity claim.

As for the Lanham Act, it imposes liability on "any person who . . . uses in commerce . . . any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin . . . of his or her goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(A).

"A false designation of origin claim brought by an entertainer under . . . the Lanham Act . . . is equivalent to a false association or endorsement claim, and the mark at issue is the plaintiff's identity." *Landham*, 227 F.3d at 626 (citations omitted). "False endorsement occurs when a celebrity's identity is connected with a product of service in such a way that consumers are likely to be misled about the celebrity's sponsorship or approval of the product or service." *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 926 (6th Cir. 2003). Thus, the underlying question is whether the plaintiff can show that the public believes that "the mark's owner sponsored or otherwise approved of the use of [the mark]." *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir. 1988). Applying that standard here, Skill must demonstrate that the public may be confused or misled into believing that Skill "sponsored or otherwise approved" of the use of his photo and name to advertise performances by "The Romantics."

To this end, Skill alleges that Palamarchuk used his name and photo in advertisements for performances by "The Romantics." For example, Skill's complaint

includes an advertisement for the 2023 Cherokee Indian Fair in North Carolina which features both his picture and his name. Skill alleges that this use of his photo is "likely to deceive and has deceived fans" into believing that "Skill would be performing alongside Palamarchuk as 'The Romantics.'" (ECF No. 1, PageID.30.)

Palamarchuk's only response to both Skill's right of publicity and Lanham Act claim is to assert that Skill sued the wrong party. He says that these claims can only be raised "against the publisher of the website that published the image Skill references." (ECF No. 11, PageID.101.) Not so.

Regarding the right to publicity claim, the Court was unable to find an instance where a Michigan court expressly limited a right of publicity claim to the "publisher" of the image; if anything, the Court's review of Michigan law revealed the opposite. For instance, in *Pallas v. Crowley, Milner & Co.*, a newspaper published the plaintiff's photograph in a cosmetics advertisement without the plaintiff's consent. 33 N.W.2d 911, 914 (Mich. 1948). The Michigan Supreme Court held that the plaintiff could recover damages from a party that was *not* the publisher—namely, a retail store that had provided the photograph to the newspaper. *Id.* Palamarchuk cites no law to the contrary.

Similarly, nothing in the express language of the Lanham Act cabins its application to only "publishers" of information. Rather, the Lanham Act applies to "*any person* who . . . *uses* any false designation of origin, false or misleading description of fact, or false or misleading representation of fact" to deceive the public. § 1125(a)(1)(A) (emphasis added).

In Defendants' reply brief, Palamarchuk says that "Skill has not created genuine factual issues that Palamarchuk gave pictures of Skill for use by a third-party." (ECF No. 15, PageID.757.) He disputes that he "had anything to do with a third party apparently posting a picture of Skill" and cites cases where conclusory allegations and generalized explanations were insufficient to create a fact issue at summary judgment. But the Court did not convert this motion to dismiss into one for summary judgment. Accordingly, if following discovery, Palamarchuk still feels that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law on this claim, he is free to re-raise the issue then.[3]

Finally, Palamarchuk says in passing that even if Skill has sued the correct defendant, "such use is a work of artistic expression." (ECF No. 11, PageID101–102.) True, the First Amendment "bars liability for the use or likeness" of a person's image in particular instances. *Battaglieri v. Mackinac Ctr. for Pub. Pol'y*, 680 N.W.2d 915, 919 (Mich. Ct. App. 2004). But Palamarchuk's one-sentence reference to this possible complex defense is not enough for this Court to dismiss Skill's claims. Indeed, "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citations omitted). Here, Palamarchuk's opaque reference to "artistic expression" is less than skeletal; his brief does not even expressly mention

---

[3] Further, as explained above, Skill's right of publicity and Lanham Act claim do not hinge on the allegations about the Cherokee Indian Fair alone. So even if Palamarchuk could dispositively show at this stage that he had nothing to do with the way it was advertised, Skill adequately alleges the claims regardless.

the First Amendment. Accordingly, the Court will not dismiss Skill's right to publicity and Lanham Act claims at this stage.

## IV.

For the reasons above, the Court DENIES Defendants' motion to dismiss (ECF No. 11).

SO ORDERED.

Dated: March 26, 2025

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

27